# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-3531

KATHY J. SMITH,

*Plaintiff-Appellant,*

v.

JOHN E. POTTER, Postmaster General
of the United States,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 02 C 864—**Sarah Evans Barker**, *Judge.*

———————

ARGUED SEPTEMBER 12, 2005—DECIDED MAY 2, 2006

———————

Before COFFEY, EASTERBROOK and EVANS, *Circuit Judges.*

COFFEY, *Circuit Judge.* On November 27, 1998, Kathy Smith was removed from her position as a mail clerk for the United States Postal Service ("USPS" or "Postal Service") due to "unacceptable misconduct". Shortly thereafter, Smith filed a grievance with her union, the American Postal Workers Union ("APWU"), claiming that the decision to dismiss her was based on the color of her skin rather than the quality of her work. After a number of adverse decisions and related appeals, Smith and the APWU submitted their dispute to arbitration, which was concluded in favor of the USPS. Not satisfied with this, Smith filed a complaint with the USPS Office of Equal Employment Opportunity ("EEO")

on June 11, 2001, which was denied as untimely. While her appeal of the EEO decision was pending with the Equal Employment Opportunity Commission ("EEOC"),[1] Smith filed a complaint in the United States District Court for the Southern District of Indiana under Title VII of the Civil Rights Act of 1964, alleging that her termination from the USPS was a result of sex and/or race discrimination. *See* 42 U.S.C. §§ 2000e *et seq.* In response the USPS filed a motion to dismiss, which the district court converted into a motion for summary judgment and granted, holding that Smith had failed to exhaust her administrative remedies. We affirm.

## I. BACKGROUND

At approximately 5:40 on the evening of October 4, 1998, two postal workers witnessed a co-worker, Kathy Smith, "throwing large chunks of concrete at the windshield of a 1997 Ford Expedition" parked in the employee parking lot of the Indianapolis Post Office. The attack on the vehicle continued until the two onlookers shouted at Smith, imploring her to stop. At that point, Smith "jumped in her car" and sped away. Smith, a mail clerk at the Indianapolis

---

[1] The Postal Service, like every other federal agency, is charged with the initial disposition of discrimination complaints lodged against the agency by its employees. *See* 39 C.F.R. § 255.6; 29 C.F.R. §§ 1614.101 *et seq.* The agency offices created pursuant to this requirement are known as "agency EEO office[s]." *See, e.g., Heckman v. Potter*, EEOC Request No. 01A52701, *2 (Feb. 24, 2006). Once an agency has dismissed or otherwise disposed of a complaint, federal employees have the right to appeal that decision to the EEOC, *see* 29 C.F.R. §§ 1614.403 *et seq.*, or file a complaint in federal court, *see* 29 C.F.R. § 1614.407. That being the case, references in this opinion to the EEO refer to the initial agency determination, while references to the EEOC concern the appeal process and eventual determination, *see infra* pp. 6-7.

Post Office ("post office") and twelve-year veteran of the Postal Service, was on-duty at the time of the incident.

The target of Smith's ire was later identified as a motor vehicle belonging to Karen Hill, Smith's supervisor at the post office. According to Smith, the attack on Hill's motor vehicle was precipitated by a series of confrontations (some violent) between the two women in the preceding months.[2] Specifically, Smith told her superiors at the Postal Service that less than two weeks earlier, on September 24, 1998, Hill had suffered a dislocated shoulder during a physical altercation between the two women at a work-related birthday celebration. In addition, Smith alleged that Hill had vandalized her automobile two months earlier and that Hill had been placing harassing "hang-up" telephone calls to her sister. As further proffered justification for her actions, Smith also admitted that she had been suffering from an "alcohol problem," and even stated that she had been drinking at work on October 4th.

Immediately following the October 4, 1998 attack on Hill's car, Smith was suspended pending a Postal Service investigation into the incident. Approximately three weeks later, on October 22, 1998, the Postal Service sent Smith a letter informing her that she had been terminated from her employment, effective November 27, 1998. In support of its decision, the Postal Service cited Smith's breach of two sections of the employee code of conduct[3] and two recent

---

[2] The record reflects that the Hill and Smith shared a common love interest—a fellow postal worker—which served as an impetus of the conflict.

[3] The two sections cited are §§ 651.53 and 666.2 and are entitled "Unacceptable Conduct" and "Behavior and Personal Habits."

incidents of absenteeism.[4] The letter also informed Smith that, as a APWU member, she had the right to file a grievance challenging her termination in accordance with the collective bargaining agreement that was in effect at the time.

Prior to even the prospective date of her termination, Smith filed a union grievance—called a "Step 1" grievance—attributing her unacceptable conduct on October 4th to her alcoholism. The union summarily rejected this explanation, upholding her dismissal and finding that management had "just cause" to take disciplinary action. Smith timely appealed, filing what is known as a "Step 2" grievance, and the union once again ruled against her. On appeal, not only did the union once again find that there was "just cause for the disciplinary action"; they also concluded that Smith's removal would "promote the efficiency of the Postal Service and enable the agency to provide a safe work place." After a final unsuccessful appeal—referred to as "Step 3" in the grievance process—Smith pursued her contractual right to have an arbitrator decide whether or not she had been discharged for just cause. The arbitrator affirmed the union's previous decisions in an award dated June 6, 2001, concluding that just cause existed to terminate Smith, primarily due to the fact that "[t]he risk of a similar violent outburst [would be] too great" and Smith's "vandalism jeopardized the safety of the workplace and impacted Management's ability to provide a secure work environment."

Smith responded to the adverse arbitration decision with the filing of a formal complaint[5] with the USPS's EEO office

---

[4]  The letter stated that on February 27, 1997 and August 11, 1997, Smith was issued written warnings for "unauthorized absence from work" and "failure to maintain a regular work schedule."

[5]  The record reflects that Smith had previously filed an informal
(continued...)

("EEO"). In her complaint, Smith alleged that her termination was not only unwarranted but was also discriminatory in nature. The EEO complaint alleged that Smith had been discriminated against on the basis of her race when she, a white female, was fired for vandalizing Hill's vehicle while Hill, a black female, had not been disciplined for: (a) vandalizing her (Smith's) vehicle on July 7, 1998; (b) placing harassing phone calls to Smith's family; and (c) assaulting Smith and dislocating her shoulder on September 24, 1998.[6] *See supra* p. 3.

On August 23, 2001, the USPS EEO office issued a "Final Agency Decision" dismissing Smith's complaint for failure to comply with the Agency's 45-day time limit for lodging a discrimination complaint. *See* 29 C.F.R. § 1614.105(a)(1). In support of its decision, the EEO cited the fact that Smith was "or should have been aware of the time limit for

---

[5] (...continued)
complaint with the USPS's EEO office on February 3, 1999. In the complaint, Smith presented a "mixed" claim of race and sex discrimination. She specifically alleged that Hill, a black female, had not been disciplined when she vandalized Smith's car in July of 1998 or when she allegedly attacked Hill and dislocated her shoulder in September of 1998, *see supra* p. 3, whereas she (Smith), a white female had been dismissed for essentially the same behavior. In addition, Smith alleged that unlike three other male co-workers, she was dismissed for having a problem with alcohol. In accordance with USPS guidelines for resolving an informal discrimination complaint, Smith thereafter agreed to take part in a dispute resolution procedure. However, two hours into mediation, Smith decided to withdraw claiming that she found the process "very frustrating and emotional." Smith's complaint was voluntarily dismissed as a result of her withdrawal from the mediation.

[6] Smith claimed that all of these incidents happened while Hill was "on the clock" or supposed to be performing official USPS duties.

contacting an EEO Counselor, as posters, including the 45-day time limit were clearly on display at the post office where [she] had worked." Citing *Reeb v. Economic Opportunity of Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir. 1975), the EEO pointed out that "the 45-day limitation period begins to run when a person with reasonably prudent regard for his/her rights knew or should have known that s(he) was being discriminated against," and Smith had not filed a complaint with the EEO until well after the 45-day regulatory time limit had expired.[7]

Undeterred, Smith filed a timely administrative appeal of the EEO determination with the EEOC on September 13, 2001. On appeal, Smith claimed for the first time that in October of 1998, she telephoned the USPS's EEO office and was informed by an EEO counselor[8] that she was required to conclude the union grievance process she had initiated before pursuing any action for discrimination or harassment through the EEO. In the alternative, Smith also argued that although her dismissal from employment was effective as of November 27, 1998, she was not actually removed from the USPS payroll until June 8, 2001—after the union grievance process was concluded.[9] Accordingly,

---

[7] As noted above, documented contact with the EEO was not initiated by Smith until February 3, 1999, which was 68 days after Smith's effective removal date and well beyond the 45-day time limit of 29 C.F.R. § 1614.105(a)(1). *See supra* p. 5 n.5.

[8] Smith was unable to recall the name or exact date that she allegedly called the EEO office nor, could she remember the name of the person she talked with. In an affidavit, dated June 14, 2003, Smith states that she telephoned the EEO office "shortly after [she] was suspended" and spoke to "[a] female, whose name [she] did] not know."

[9] Article 16.5 of the collective bargaining agreement between the USPS and the APWU provides that when an employee initiates (continued...)

Smith's position was that she had complied with the 45-day time limit of 29 C.F.R. § 1614.105(a)(1) when she filed a complaint with the EEO within four days of the final disposition of the grievance process (on June 11, 2001), and that, due to the fact that she was misled by the USPS's EEO office, the Postal Service should be estopped from arguing otherwise.

While her EEOC appeal was pending, however, Smith short-circuited the administrative process by filing this action in the United States District Court for the Southern District of Indiana on June 3, 2002, claiming that she had been discriminated against by the USPS on the basis of her race, in violation of 42 U.S.C. § 2000e. Pursuant to 29 C.F.R. § 1614.409, once Smith filed her complaint in federal court the EEOC, by operation of law, lost any authority to proceed with her appeal. *See* § 1614.409 (stating that: "Filing a civil action under § 1614.408 or § 1614.409 shall terminate Commission processing of the appeal"). Indeed, beginning on June 3, 2002, the EEOC lacked authority over Smith's appeal and was barred from deciding or otherwise adjudicating the appeal. *See, e.g.*, *Harris v. Dep't. of Veterans Affairs*, EEOC Appeal No. 01A51717 (2005); *Olson v. Dep't. of Treasury*, EEOC Appeal No. 01983200 (2001). Nonetheless, the EEOC, in an unusual and unexplained breach of regulations, proceeded with the appeal and issued an opinion on September 12, 2002, reversing its earlier

---

[9] (...continued)
the grievance procedure the "employee shall remain on the job or on the clock (in pay status)" until the final "disposition of the grievance, either by settlement or an arbitrator's final and binding decision." Thus, although Smith was officially terminated from her employment by the USPS effective November 27, 1998, by operation of the collective bargaining agreement, she remained in "pay status" until the grievance process was concluded in June of 2001.

determination and concluding that Smith's original EEO complaint was, in fact, timely under 29 C.F.R. § 1614.105(a)(1).[10] This prompted Smith to file a motion to withdraw her federal action, which the district court summarily denied.

The defendant filed a motion to dismiss, or in the alternative, motion for summary judgment for the first time on September 16, 2002, arguing that Smith had failed to exhaust her administrative remedies.[11] That motion was denied without prejudice while the district court ascertained whether any parallel administrative proceedings were erroneously taking place. In addition, the court issued a stay of the proceedings.[12] Once the district court was satisfied that all agency proceedings had been terminated in accordance with 29 C.F.R. § 1614.409, the court lifted the stay and the defendants renewed their motion to dismiss, or in the alternative, moved for summary judgment.

On August 27, 2004, the district court granted the defendant's renewed motion and treated it as a motion for summary judgment.[13] The court ultimately concluded that

---

[10] The EEO appellate decision states: "[T]he record reflects that complainant's last day in pay status was in November 1998; however, the PS Form 50 also indicates that complainant's effective removal date was June 8, 2001. Given this difference, and considering that complainant's initial EEO Counselor contact occurred only several days after the effective removal date identified on the PS Form 50, the Commission determines that [Smith's] EEO Counselor contact was timely."

[11] The motion was entitled "Defendant's Motion to Dismiss, or in the alternative, Motion for Summary Judgment."

[12] This action by the district court was spurred by the surprise EEOC decision of September 12, 2002.

[13] Citing the fact that the parties had submitted various "materials outside the pleadings, *e.g.*, sworn declarations from witnesses

(continued...)

Smith had failed to exhaust her administrative remedies by failing to contact an EEO counselor within 45 days of the effective date of her dismissal (November 27, 1998) as required by 29 C.F.R. § 1614.105. In so deciding, the court also: (a) rejected Smith's argument that the Postal Service should have been equitably estopped from asserting Smith's breach of the limitations period based on the misleading telephone conversation that she allegedly had with an EEO counselor in October of 1998, *see supra* p. 6; and (b) refused to consider the conclusion of her union grievance procedure (the June 6, 2001 arbitration decision) as the "effective date" of personnel action under § 1614.105.

## II. ISSUES

On appeal, Smith argues that the district court erroneously granted summary judgment to the Postal Service on the grounds that she failed to exhaust her administrative remedies. In particular, Smith challenges the district judge's conclusion that she failed to timely contact an EEO counselor and that equitable estoppel should not apply with regards to her alleged misleading conversation with an EEO representative in October of 1998. Smith also claims that the district court should have deferred to the September 12, 2002, decision of the EEOC holding that her counselor contact was timely pursuant to § 1614.105.

---

[13] (...continued)
other than the parties, EEOC letters, grievance forms from the plaintiff's union, etc." the district court properly converted the defendant's motion into a motion for summary judgment. *Smith v. Potter*, 2004 WL 1936292 at *9, No. IP 02-0864-C-B/S (S.D. Ind. Aug. 27, 2004); Fed. R. Civ. P. 12(b); *McCoy v. Gilbert*, 270 F.3d 503, 508 (7th Cir. 2001).

### III. ANALYSIS

We review the district court's grant of summary judgment[14] in favor of the Postal Service *de novo. See Evans v. City of Chicago*, 434 F.3d 916, 924 (7th Cir. 2006). In determining whether summary judgment is proper at this stage of the proceedings, we view the record in the light most favorable to the non-moving party, here Smith. *See Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and

---

[14] Initially, we should note that we agree with the district court's treatment of the defendant's motion to dismiss as a motion for summary judgment in this case. As noted above, 29 C.F.R. § 1614.105(a)(1) requires that employees alleging that they are the victims of discriminatory conduct initiate an EEO complaint "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." § 1614.105(a)(1). This court has made clear on a number of occasions that such a deadline "is construed as a statute of limitations and not as a jurisdictional prerequisite." *Johnson v. Runyon*, 47 F.3d 911, 917 (7th Cir. 1995); *accord Rennie v. Garrett*, 896 F.2d 1057, 1062-63 (7th Cir. 1990); *see also Irwin v. Veterans Administration*, 498 U.S. 89, 96 (1990). Accordingly, § 1614.105(a)(1) merely acts as a condition precedent to the bringing of a suit in federal court and allows the party resisting a motion to dismiss to introduce evidence sufficient to establish the equitable doctrines of waiver, estoppel and/or tolling. *See Rennie*, 896 F.2d at 1062; *Bohac v. West*, 85 F.3d 306, 312 (7th Cir. 1996); *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996). Thus, unlike a motion to dismiss involving a question of subject matter jurisdiction, a motion to dismiss concerning § 1614.105(a)(1), by operation of law, is converted to a motion for summary judgment when the parties provide additional documentation evincing their entitlement to equitable relief, as was the case here. *See* Fed. R. Civ. P. 12(b); *Bohac*, 85 F.3d at 311-12.

that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it is outcome determinative. *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997). However, "bare allegations not supported by specific facts are not sufficient in opposing a motion for summary judgment." *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004) (quoting *Hildebrandt v. Ill. Dep't. of Natural Res.*, 347 F.3d 1014, 1036 (7th Cir. 2003)); *accord Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989).

### A. Timely Contact with an EEO Counselor

On appeal, Smith initially asserts that the district court erred in determining that her contact with an EEO counselor was not timely within the meaning of 29 C.F.R. § 1614.105(a)(1). Specifically, Smith argues that she satisfied the 45-day limitations period of § 1614.105(a)(1) when she telephoned the EEO in October of 1998. We disagree.

As stated above, 29 C.F.R. § 1614.105 sets forth that federal employees "who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must . . . initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."[15] Failure to do so equates to the violation of a statute of limitations and, notwithstanding extenuating circumstances, would bar a federal employee from pursuing any

---

[15] The purpose of this section is to allow the government and the employee involved an opportunity to "informally resolve the matter," before formal action is taken, either through the EEOC or in the courts. *See* § 1614.105(a).

action against the government for violation of Title VII of the Civil Rights Act of 1964. *See supra* p. 10 n.14; *Rennie*, 896 F.2d at 1062. The Supreme Court has consistently instructed that, in determining when such an action accrues, the "proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980); *see Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (per curiam). This court has expanded on that framework, essentially creating a two-prong test to determine the date of an unlawful employment practice: (1) "there must be a final, ultimate, non-tenative decision to terminate the employee"; and (2) "the employer must give the employee 'unequivocal' notice of its final termination decision." *Flannery v. Recording Indus. Ass'n of America*, 354 F.3d 632, 637 (7th Cir. 2004) (quoting *Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 486 (7th Cir. 2002)) (internal citations omitted).

Applying the *Flannery* factors to Smith's cause of action, it is clear that she was both subject to a "final, ultimate, non-tenative [employment] decision" and that she was unequivocally notified of that decision. The first sentence of the letter that was sent to Smith on October 22, 1998,[16] conspicuously states: "You are hereby notified that you will be removed from the Postal Service on November 27, 1998." The letter goes on to explain the rationale for that action, informing Smith that she has been "charged with: Unacceptable Conduct—Vandalizing Employee's Vehicle Parked on Postal Property." It is unlikely that a reasonable person in Smith's position could possibly draw any conclusion from that language, except that the Postal Service had made a "final, ultimate, non-tenative [employment] decision," and that the effective date of that action was Novem-

---

[16] Approximately two-and-a-half weeks after her attack on Hill's vehicle and well into her suspension which became effective on that date, October 4, 1998.

ber 27, 1998. *See Ricks*, 449 U.S. at 258. Also, Smith does not, and cannot, contend that she was not given prompt and "unequivocal" notification of her dismissal.[17] *See Flannery*, 354 F.3d at 637; *Dvorak*, 289 F.3d at 486. Accordingly, Smith's cause of action accrued on November 27, 1998, and without more, her failure to file an EEO complaint until more than 60 days later on February 3, 1999,[18] *see supra* p. 5 n.5, barred her from bringing suit in federal court.[19]

---

[17] Being that her employer was the Postal Service, it not only makes sense that she was informed of her dismissal via Certified Mail, foredooming at least this portion of her claim, it is also a bit ironic.

[18] This is the date that Smith filed an official informal complaint with the USPS's EEO office. *See* 39 C.F.R. § 255.6(d) (requiring that employees that feels they have been discriminated against "first exhaust informal administrative procedures before filing a formal complaint").

[19] In a tag-along argument, Smith claims that instead of considering her effective date of dismissal, November 27, 1998, the court should have referred to the date that her union grievance process was concluded, June 6, 2001, in order to calculate the 45-day time limit under § 1614.105. However, Smith does not, and cannot, offer any precedential support for this conclusion. As the Supreme Court held in *Ricks*, the "pendency of a grievance, or some other method of collateral review of an employment decision does not toll the running of the limitations period." *Ricks*, 449 U.S. at 258. (emphasis in original). Accordingly, in Smith's case the limitations period began to run on the effective date of her termination, and her participation in the union grievance process would not toll the running of the statute of limitations—regardless of whether she was kept on the USPS payroll according to her collective bargaining agreement or not. *See Lucas v. Chicago Transit Authority*, 367 F.3d 714, 723 (7th Cir. 2004) (stating that: "As we have explained, '[a]n employer's refusal to undo a discriminatory decision is not a fresh act of discrimination.' "); *Librizzi v. Children's Memorial Med. Center*, 134 F.3d 1302, 1306 (7th Cir. 1998); *see also Ricks*,

(continued...)

*Johnson*, 47 F.3d at 917.

Smith attempts to overcome this fact, arguing that although she did not officially file a complaint until February of 1999, she did in fact "contact" the EEO within the meaning of 29 C.F.R. § 1614.105 in October of 1998[20] when

---

[19] (...continued)
449 U.S. at 257 (holding that "continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination."); *Chardon*, 454 U.S. at 9; *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 574 (7th Cir. 1998).

[20] We note that neither this court nor the Postal Service has addressed the precise contours of the term "contact" within the context of § 1614.105(a). However, in *Bailey v. United States Postal Serv.*, the Eight Circuit encountered a similar situation in which a Postal Service employee argued that the telephone call she allegedly placed to the USPS's EEO office within the 45-day limit of § 1614.105(a) should constitute "contact" within the meaning of that regulation. 208 F.3d 652, 654-55 (8th Cir. 2000). The Eighth Circuit disagreed concluding that, in that instance, a telephone call alone would not suffice. In doing so the court noted that Bailey had failed to offer any evidence to support her contention that during the phone call at issue, EEO counselors had "led her to believe that she had taken all the steps necessary to preserve her right to bring a claim in federal court." *Id.* at 654. To the contrary, the record included affidavits from the operators who had spoke with Bailey stating that they had "informed Bailey that her conversations with them would not be considered requests for counseling and that such requests needed to be submitted in writing within 45 days of the alleged discriminatory incident." *Id.* In addition, the court also concluded that Bailey's claim was belied by the fact that the "Postal Service . . . appears to have a regular policy of requiring employees who allege harassment to submit their EEO counseling requests in writing." *Id.* at 654 n.2. The EEOC, on the other hand, has consistently held that "[t]o establish EEO contact, complainant[s] must contact an official logically connected to the EEO process, and exhibit an
(continued...)

she allegedly telephoned the USPS's EEO office and was told that she was required to conclude the union grievance process before filing an action.[21] *See supra* pp. 6-7. To support this contention, Smith cites her own affidavit dated June 14, 2003 in which she states that "[s]hortly after [she] was suspended, [she] telephoned the EEO office located at the USPS regarding [her] removal which [she] believed to be unfair and discriminatory." However, a declaration of this nature alone is insufficient to resist summary judgment; for it is well settled that "self-serving statements

---

[20] (...continued)
intent to file a discrimination claim." *Dehaan v. Chao*, 2001 WL 1103726, *1, EEOC DOC 01A10009 (August 2, 2001) (citing *Allen v. United States Postal Service*, EEOC Request No. 05950933 (July 9, 1996)). There seems to be an inherent conflict between the Eight Circuit's decision in *Bailey*, which suggests that telephone contact is insufficient to constitute "contact" within the meaning of 29 C.F.R. § 1614.105(a), and the EEOC's statement that only "intent" to file a claim is needed to satisfy the regulation. We normally defer to an agency's interpretation of its own regulations unless "plainly erroneous or inconsistent with the regulation." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359, 104 L. Ed. 2d 351, 109 S. Ct. 1835 (1989) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). Nevertheless, because we need not resolve this issue to dispose of Smith's appeal, we reserve judgment on this issue until required to do so in the future with a more complete record.

[21] The Postal Service argues that Smith did not present this argument to the district court, thus, constituting a waiver of the argument. *See, e.g., Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005). However, a cursory review of Smith's reply to the Postal Service's motion to dismiss establishes that this is not the case. In that document, Smith specifically takes issue with the Postal Service's assertion that February 12, 1999 was the first time she had "contact" with the USPS's EEO office by stating that: "This was not Kathy's first contact with the EEO office located at the USPS . . . ."

contained in an affidavit will not defeat a motion for summary judgment when those statements are without factual support in the record." *Evans v. City of Chicago*, 434 F.3d 916, 933 (7th Cir. 2006) (quoting *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004)) (internal citations omitted).

In a rather transparent, albeit clever, attempt to overcome this unfavorable precedent, Smith proceeded to introduce into evidence the affidavits of three other persons, whom she claims to have told about her alleged October telephone call to the EEO office, to corroborate her affidavit. The affiants all state that in the week following her suspension in October of 1998, Smith told them that she had contacted the USPS's EEO office and had been told that she must conclude the union grievance process prior to filing an EEO complaint. For example, Damon D. Jermmott, a 19-year-old who claims to have been acquainted with Smith since 1997, conveniently states that: "The week following her suspension, Kathy Smith told me that she contacted the EEO office located at the United States Postal Service to complain about the circumstances leading to her removal."[22]

---

[22] The other affidavits are very similar to that of Jermmott in content. The only difference is that the other affiants are not 19 year-olds; they are in fact current or former postal workers. Boyd G. "Butch" Stevens, Jr. states that he has "worked as a mail handler for the [USPS] for 20 years" and has "known Kathy Smith for 11 years." Stevens further states that he "did not trust the EEO office located at the USPS to give Kathy Smith good advice." Accordingly, Stevens told her to call another EEO office but she was directed back to the USPS EEO office and "was told the EEO could not help her until the union grievance process was complete." Similarly, Tammy Herwehe Zemke, who claims in her affidavit to have been "wrongfully removed in 2001 from my position with the USPS" states that "Kathy Smith told me that she contacted the EEO office located at the USPS, but was told the EEO could not help her until the union grievance process was
(continued...)

According to Smith, the affida-vits of Jermmott, Stevens and Zemke corroborate her affidavit and thus are sufficient to, at the very least, present a question of material fact. *Evans*, 434 F.3d at 933. We disagree. The affidavits are clearly offered to prove the truth of the matter asserted and thus constitute inadmissible hearsay. *See* Fed. R. Evid. 801.[23] As such, they may not be relied upon to resist a

---

[22] (...continued)
complete." Zemke also corroborated Smith's claim by stating that after she was dismissed from her job at the USPS in 2001, she "contacted the EEO office at the USPS, and was told I would have to complete the union grievance process before the EEO office would process [her] claim."

[23] On appeal, Smith mistakenly argues that "the affidavits fall within the exception of the hearsay rule under Fed.R.Ev. [sic] 801(d)(1)(B) as prior consistent statements of a witness." This couldn't be further from the truth, for a number of reasons.

For one thing, the Supreme Court has made clear that: "Prior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited . . . . The Rule speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told." *Tome v. United States*, 513 U.S. 150, 166-67 (1995); *United States v. Stoecker*, 215 F.3d 788, 791 (7th Cir. 2000). That is precisely what Smith is trying to achieve by submitting the affidavits at issue here—she is attempting to bolster the veracity of her story that she called the EEO office in October of 1998—and, as such, they will not be considered for purposes resisting summary judgment. *See Davis*, 396 F.3d at 874 n.3; *Galdikas*, 342 F.3d 684 at 695.

What's more, Smith seems to overlook the fact that, even if a statement is submitted for a proper purpose such as to rebut a claim of recent fabrication, such statements must have been "made before the declarant had a motive to fabricate." *United States v. Anderson*, 303 F.3d 847, 858 (7th Cir. 2002) (quoting *United States v. Ruiz*, 249 F.3d 643, 647 (7th Cir. 2001). Two of the affidavits Smith submitted are dated June 11th and the other
(continued...)

motion for summary judgment. *See Davis v. G.N. Mortgage*, 396 F.3d 869, 874 n.3 (7th Cir. 2005) (citing *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (1996)); *Galdikas v. Fagan*, 342 F.3d 684, 695 (7th Cir. 2003).

Ultimately, Smith has failed to present this court with evidence sufficient to create a question of material fact as to whether she complied with the 45-day period of limitations set forth in 29 C.F.R. § 1614.105(a)(1). That being the case, we agree with the district court's conclusion that Smith's claim was time-barred and conclude that the grant of summary judgment on that portion of Smith's claim was proper.

## B.  Equitable Estoppel

Smith next avers that the district court erred in concluding that, as a matter of law, the USPS was not equitably estopped from asserting that her claim was barred by the 45-day statute of limitations deadline. In particular, Smith finds fault with the district court's conclusion that the Postal Service did not engage in misrepresentation or deception concerning the limitations period of § 1614.105(a)(1). Again, we disagree.

This court has repeatedly held that, in the statute of limitations context, the equitable doctrine of estoppel only comes "into play if the defendant takes active steps to prevent the plaintiff from suing in time." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990); *see*

---

[23] (...continued)
is dated June 13, 2003. This was *long* after Smith obtained a motive to fabricate a story about having called the EEO office in October of 1998, and was coincidentally only approximately a week after she filed suit in federal court.

*Lucas*, 367 F.3d at 722; *see also Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 292 (7th Cir. 1986) ("Equitable estoppel is available only if the employee's otherwise untimely filing was the result either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.") (citation and quotation omitted). However, even if a plaintiff has demonstrated that an employer took affirmative steps to lull them into inaction concerning the filing of a discrimination charge, the plaintiff must also establish "actual and reasonable reliance on the defendant's conduct or representations." *Mull*, 784 F.2d at 292 (quoting *Naton v. Bank of California*, 649 F.2d 691, 696 (9th Cir. 1981)); *see Hentosh v. Herman M. Finch Univ. of Health Sciences/Chicago Med. Sch.*, 167 F.3d 1170, 1174 (7th Cir. 1999); *Wheeldon v. Monon Corp.*, 946 F.2d 533, 537 (7th Cir. 1991). Smith has failed to sufficiently establish either of these requirements.

In essence, Smith's equitable estoppel argument is nothing more than a cheap imitation of her unavailing arguments discussed above. The only evidence that Smith submitted to support her claim that the USPS either deliberately or knowingly sought to deceive her into filing an untimely EEO action was her own self-serving affidavit and the affidavits of three of her acquaintances. *See supra* pp. 15-16. As we have already determined, Smith's own affidavit is insufficient to resist summary judgment, *see supra* at 16; *Evans*, 434 F.3d at 933, and the three corroborating affidavits may not be considered for purposes of a motion for summary judgment due to the fact that they constitute inadmissable hearsay. *See supra* pp. 15-16; *Davis*, 396 F.3d at 874 n.3. Thus, because Smith cannot establish that the Postal Service took "active steps to prevent [her] from filing on time," *Cada*, 920 F.2d at 450-51, her equitable estoppel claim must fail as a matter of law.

Also, even if we were to assume *arguendo* that Smith presented sufficient evidence of wrongdoing on the part of the Postal Service, she has failed to demonstrate that she reasonably relied on any bad advice she was given. As the district court noted, the record reflects that there was an "abundance of correct information [for Smith to seek out], including the various posters throughout the workplace which inform grievants of the 45-day time limit for filing an EEO complaint." Given the pervasiveness of correct information at Smith's workplace, it is disingenuous of her to argue that she reasonably relied on a single, brief telephone call to lead her astray. *See Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990) (stating "that federal courts have typically extended equitable relief only sparingly"); *see also Robinson v. Dalton*, 107 F.3d 1018, 1023 (3d Cir. 1997) (holding that one telephone call to an EEO counselor who allegedly gave an employee bad advice was not enough to establish that the employee "in some extraordinary way has been prevented from asserting his or her rights" for purposes of equitable tolling).

## C.  Deference to the EEOC

Smith's final argument on appeal borders on frivolous, but for the sake of completeness we will discuss it briefly. Essentially, Smith claims that "the district court should have deferred to the EEOC's determination that [her] claim was timely." Smith refers, of course, to the EEOC's September 12, 2002 decision reversing the EEO and holding that her filing was timely under 29 C.F.R. § 1614.105(a)(1). *See supra* p. 7. Nevertheless, there is a very fundamental reason why the district court properly refused to accord the EEOC's decision any deference whatsoever and why this court should not follow suit.

When a federal employee files a Title VII suit in federal court, the district court charged with deciding that action is

required to preform a *de novo* review of the record, including administrative agency proceedings. *See Chandler v. Roudebush*, 425 U.S. 840, 861 (1976); *Kontos v. U.S. Dep't. of Labor*, 826 F.2d 573, 575 n.4 (7th Cir. 1987) (stating that "we explicitly uphold the long-presumed position that all agency decisions involving federal employee discrimination claims are entitled to *de novo* review in the federal courts). Likewise, our review of the district court's decision is *de novo. See Evans*, 434 F.3d at 924. Thus, neither this court, nor a district court, is under any obligation to defer to the determination of an administrative agency in an action which falls under Title VII of the Civil Rights Act of 1964. *See id.* Indeed, to do otherwise would be grounds for reversal.

## IV. CONCLUSION

The decision of the district court is

AFFIRMED.

A true Copy:

    Teste:

                    _____
                    *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*