NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 16, 2007[*]
Decided May 16, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 07-1067

| | |
|---|---|
| HOWARD FURKIN, | Appeal from the United States |
|     *Plaintiff-Appellant,* | District Court for the Northern |
| | District of Illinois, Eastern Division |
|     *v.* | |
| | No. 06 C 3342 |
| LEONID SMIKUN and | |
| INCREDIBLE TECHNOLOGIES, | George W. Lindberg, |
| INC., | *Judge.* |
|     *Defendants-Appellees.* | |

**O R D E R**

This appeal concerns the timeliness of Howard Furkin's diversity suit against Leonid Smikun and Incredible Technologies, Inc. ("IT"). Furkin, *pro se*, says that in 1985 he hired Smikun to write a computer software program called "Silent Partner" and that the two agreed to split evenly the proceeds of its sales. Furkin says that while he was imprisoned between 1994 and 2000 Smikun withheld from Furkin his share of sales and that, in selling the rights to "Silent Partner" to IT in 2000,

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

Smikun and IT conspired to convert his property. The district court granted summary judgment against Furkin because his claims, whether understood as being brought under Illinois law or the Copyright Act, are barred by the statute of limitations. We affirm.

## Background

"Silent Partner" is a route management program that tracks the revenue of coin-operated machines. Furkin says that after he hired Smikun to write the software in 1985, he retained Smikun to provide technical support for their customers. The operation was incorporated in 1989, with Furkin presiding over the business. Unknown to Furkin, Smikun obtained copyrights for the program in 1985, 1987, 1989, and 1995, and on each copyright application he indicated that the software was not a "work made for hire," *see* 17 U.S.C. § 201(b).

The Silent Partner business took a big hit in 1994, when Furkin was convicted of possessing an unregistered sawed-off shotgun, *see* 26 U.S.C. § 5861(d), and then of conspiring to defraud the IRS, *see* 18 U.S.C. § 371, tampering with witnesses, *see* 18 U.S.C. § 1512(b)(1), obstructing justice, *see* 18 U.S.C. § 1503, and engaging in unregistered transactions in gambling devices, *see* 15 U.S.C. §§ 1173(a)(3) and 1176. *See United States v. Furkin*, 119 F.3d 1276, 1278-79 (7th Cir. 1997). In 1995 Furkin began serving a combined sentence of 144-months' imprisonment for all counts. *Id.* The Silent Partner, Inc. involuntarily dissolved, but Smikun continued to sell "Silent Partner" programs while Furkin was in prison. Smikun wrote letters to Furkin and would periodically send him money orders in amounts ranging from $100 to $500, which Furkin interprets as payment for sales of "Silent Partner."

In September 2000, Furkin discovered that Smikun had sold the rights to "Silent Partner" to IT. He wrote a letter to Smikun expressing his "shock" about the sale on October 1, 2000. Smikun wrote back to explain that the sale had occurred in August and that he had not mentioned it because he had been waiting for the official announcement of the sale. Furkin says he did not file suit then because Smikun continued to send him partial payments and assured him that he would receive his full share of the sale upon his release from prison in 2004. Furkin also asserts that Smikun continued to make "similar promises" through 2005, and that Furkin "had no reason to disbelieve him based upon [their] long relationship[.]" Furkin filed this lawsuit in 2006, after Smikun stopped returning his phone calls.

Smikun responded to Furkin's complaint with a motion for summary judgment, arguing, among other things, that the suit is barred by the statute of limitations. IT, meanwhile, moved to dismiss for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The company asserted

that Furkin's state-law claims are preempted by the Copyright Act, 17 U.S.C. §§ 101-1332, which requires that a plaintiff register a copyright before initiating an infringement suit. IT also argued that under either the Copyright Act or Illinois law, the suit is barred by statutes of limitations.

In his responses to the motions, Furkin asserted that statutes of limitations should not bar his suit because Smikun fraudulently concealed the existence of the claims and "lulled" him into inaction. In support, Furkin stated by affidavit that from 1994 to 2005 Smikun sent him small payments and promised to pay him his full share of the sale of "Silent Partner." Furkin also submitted three sets of FBI agents' notes from meetings with Smikun in 1991 and 1993; letters from Smikun dated 1998, 1999, 2000, and 2003; a 1998 money-order stub in the amount of $100; and a 1999 money-order stub in the amount of $300.

On September 18 Furkin filed a Federal Rule of Civil Procedure 56(f) affidavit in which he requested an indefinite amount of time to obtain affidavits from additional unnamed out-of-state witnesses. On October 23—before the district court had ruled on his 56(f) motion—Furkin filed additional affidavits from three former employees and a former customer. The affiants testified to Furkin's ownership of "Silent Partner" as well as his arrangement with Smikun to split the proceeds of sales. Furkin also filed stubs from checks written on the Silent Partner, Inc. account.

On December 12, the district court granted summary judgment for Smikun and then *sua sponte* granted summary judgment for IT on their statute of limitations defenses. The court determined that all of Furkin's claims accrued on September 20, 2000, when he discovered Smikun's sale of "Silent Partner" to IT. Consequently, the court deemed Furkin's 2006 suit untimely under the Copyright Act's three-year statute of limitations, *see* 17 U.S.C. § 507, and Illinois's five-year statute of limitations for a claim of conversion, *see* 720 ILCS § 5/13-205.

The court then analyzed whether Furkin could invoke either the doctrine of equitable estoppel with respect to his copyright claims, or Illinois's fraudulent concealment statute, *see* 720 ILCS § 5/13-215, with respect to his state-law cause of action. The court found that, even if Smikun's payments and promises "lulled" Furkin into thinking he retained a property interest in the proceeds of sales of "Silent Partner," the latest he received such money was in 2000, and none of his evidence, other than his own affidavit, established later payments or promises. Accordingly, the district court determined that Furkin could not invoke either equitable estoppel or fraudulent concealment to excuse his untimely case, as he had not proven that Smikun or IT took active steps to prevent him from suing.

In so ruling, the district court did not consider the FBI agents' notes from their meetings with Smikun in 1991 and 1993, which the district court deemed inadmissible hearsay. The district court did, however, admit as evidence the additional affidavits and check stubs that Furkin submitted on October 23. The court found, however, that Furkin's evidence did not support his equitable estoppel or fraudulent concealment arguments.

## Analysis

On appeal, Furkin contests (1) the district court's application of statutes of limitations to bar his suit; (2) its grant of summary judgment without allowing Furkin additional time for discovery; (3) its *sua sponte* grant of summary judgment for IT; and (4) its adverse evidentiary ruling on the notes from the FBI agents' meetings with Smikun.

Furkin first argues that the district court erred by not applying the doctrines of equitable estoppel and fraudulent concealment to bar Smikun's and IT's statute of limitations defense. He says that the district court failed to consider his affidavit, in which he asserted that Smikun made promises and payments to him between 2000 and 2005. He says that his sworn statements, which were not contested by Smikun or IT, created a genuine issue of material fact about whether Smikun's conduct "lulled" him into inaction.

We review a district court's grant of summary judgment *de novo*, viewing the facts in the light most favorable to the non-moving party. *Repa v. Roadway Express, Inc.*, 477 F.3d 938, 940 (7th Cir. 2007). Because Furkin bears the burden of proof on his equitable estoppel argument, he must present facts that, if true, "would justify equitable modification of the statute of limitations." *See Hamilton v. Komatsu Dresser Indus., Inc.*, 964 F.2d 600, 606 (7th Cir. 1992). The common law doctrine of equitable estoppel applies to claims under the Copyright Act, *see Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983), and "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time." *Smith v. Potter*, 445 F.3d 1000, 1010 (7th Cir. 2006) (citation and quotation marks omitted). Furkin must also show that he actually and reasonably relied upon Smikun's or IT's conduct or representations. *Smith*, 445 F.3d at 1010.

We reject Furkin's equitable estoppel argument because, as a matter of law, Smikun's promises and payments did not prevent Furkin from filing suit. Smikun candidly acknowledged his sale of "Silent Partner" in an October 2000 letter to Furkin. That unambiguous expression of an adverse claim of ownership of the rights to "Silent Partner" clearly alerted Furkin to the existence of his copyright claim, and Furkin then knew, or should have known, that Smikun and IT had violated his ownership rights. *See Gaiman v. McFarlane*, 360 F.3d 644, 652-53 (7th

Cir. 2004). Even if we accept as true Furkin's statement that Smikun continued to make promises and payments to him until 2005, such acts were not active steps to prevent Furkin from timely filing his copyright claims. *See Smith*, 445 F.3d at 1010. And since Furkin has not set forth specific facts that would lead a factfinder to conclude that IT took any action to prevent him from suing in time, the district court properly rejected Furkin's equitable estoppel argument against IT as well.[1]

Furthermore, while at this stage we may accept as true Furkin's actual reliance on Smikun's many promises to pay him, his reliance was unreasonable. *See Smith*, 445 F.3d at 1010. If, as Furkin says, Smikun reiterated unfulfilled promises for nearly six years, Furkin could not have reasonably believed that Smikun would pay him in full after such a long wait. *See id.* at 1011; *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 891 (6th Cir. 2004). Accordingly, the district court properly rejected Furkin's equitable estoppel argument.

For similar reasons, we reject Furkin's fraudulent concealment argument with respect to his state-law causes of action. Under Illinois law, if Smikun or IT fraudulently concealed a cause of action from Furkin, Furkin is entitled to bring his action for conversion five years after he discovered it. *See* 735 ILCS § 5/13-215 (2007); *Shropshear v. Corp. Counsel of Chi.*, 275 F.3d 593, 597 (7th Cir. 2001). But even if we assume, for the purpose of summary judgment, that Smikun concealed his ownership interest in "Silent Partner" from 1985 to 2000, Furkin admits that he learned about Smikun's sale of all rights to "Silent Partner" in 2000. At that time, Furkin had all the information he needed to file suit. Consequently, his 2006 lawsuit is too late.

Furkin next argues that the district court prematurely granted summary judgment without ruling on his Rule 56(f) motion. He argues that if he had more time, he would have deposed Smikun, IT, and the FBI agents who interviewed Smikun in 1991 and 1993.

---

[1] Our statute of limitations analysis assumes that Furkin's only claim under the Copyright Act accrued when he discovered the sale of "Silent Partner" in September 2000. *See Gaiman*, 360 F.3d at 652-53. We note, however, that had Furkin sued IT for a single or multiple instances of copying "Silent Partner" within the three years prior to the filing of his lawsuit, his claim(s) of copyright infringement would be timely. Although we could liberally construe Furkin's papers to make such a claim, it would not save Furkin's lawsuit. As IT notes, Furkin has not attempted to register a copyright, a prerequisite for a suit for copyright infringement. *See* 17 U.S.C. § 411(a); *Automation by Design, Inc. v. Raybestos Prods.* Co., 463 F.3d 749, 753 n.1 (7th Cir. 2006); *Pickett v. Prince*, 207 F.3d 402, 404 (7th Cir. 2000).

If a party would like additional time for discovery, he must submit an affidavit stating the reasons why. Fed R. Civ. P. 56(f). A district court may, in its discretion, grant or deny the request. *See Grayson v. O'Neill*, 308 F.3d 808, 815-16 (7th Cir. 2002).

Here, the district court clearly considered, and effectively granted, Furkin's request for additional discovery. Furkin had asked for additional time to "enlarge [his] responses by affidavits from other witnesses." Before the district court had ruled on the motion, Furkin submitted four affidavits from out-of-state witnesses. The court later permitted the filing of the affidavits. Furkin never requested, as he now asserts, to obtain depositions of Smikun, IT, and various FBI agents, and so he has forfeited the argument by not raising it before the district court. *See Omega Healthcare Investors, Inc. v. Res-Care, Inc.*, 475 F.3d 853, 858-59 (7th Cir. 2007).

Furkin next argues that the district court should not have *sua sponte* granted summary judgment in IT's favor because he was not given a fair opportunity to present evidence against IT. We disagree. "[W]here one defendant succeeds in winning summary judgment on a ground common to several defendants, the district court may also grant summary judgment to the non-moving defendants, if the plaintiff had an adequate opportunity to argue in opposition." *Acequia, Inc. v. Prudential Ins. Co. of Am.*, 226 F.3d 798, 807 (7th Cir. 2000); *see also Simpson v. Merchants Recovery Bureau, Inc.*, 171 F.3d 546, 549 (7th Cir. 1999). Here, the district court's *sua sponte* grant of summary judgment for IT was proper because it was on the same ground—the statute of limitations—as its grant of summary judgment for Smikun, and Furkin had a full opportunity to present evidence on that ground in his responses to both of their motions.

Finally, we decline to address Furkin's argument that the district court improperly ruled that FBI agents' notes from 1991 and 1993 meetings with Smikun were hearsay. Even if they had been admitted, they would not affect Smikun's and IT's statute of limitations defense.

AFFIRMED.