**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1589
_____

GLENN HAROLD HARRIS,
Appellant

v.

POSTMASTER GENERAL OF THE UNITED
STATES
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-19-cv-05885)
District Judge: Honorable Joseph F. Leeson
_____

Submitted: December 7, 2021

Before: SHWARTZ, PORTER, and FISHER,
*Circuit Judges*.

(Filed: February 4, 2022)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PORTER, *Circuit Judge*.

Glenn Harris alleges employment discrimination based on sex, sexual orientation, and disability. But he did not "initiate contact" with an Equal Employment Opportunity ("EEO") counselor within forty-five days of the "effective date" designated by the United States Postal Service ("USPS") in its personnel action, or within forty-five days of other discriminatory conduct. So we will affirm the District Court's grant of summary judgment for USPS.

I

Harris was a letter carrier with USPS.[1] He was fired due to allegedly inappropriate conduct. His last day was April 22, 2019. USPS placed him in "emergency, off-duty non-pay status" effective April 20, 2019. App. 90. He did not return to work after April 22, 2019. On June 12, 2019, USPS issued a notice of removal "effective July 20, 2019." App. 92. Harris received that notice on June 14, 2019.

Harris began a grievance process with his union after receiving the notice of removal. The grievance proceeding ended on August 2, 2019 with a "Step B Decision" that said, "[t]he effective date of the removal shall be August 19, 2019 to afford the grievant an opportunity to voluntarily resign from the Postal Service." App. 101, 104.

---

[1] The proper Defendant is Louis DeJoy in his official capacity as Postmaster General. *See* 42 U.S.C. § 2000e-16(c). Following the District Court's lead, we refer to Appellee as "USPS."

Harris alleges he was fired based on sex, sexual orientation, and disability. He contacted a USPS EEO counselor for pre-complaint processing on September 9, 2019, and he filed his formal EEO complaint on December 13, 2019.

On the same day Harris filed his EEO complaint, he also filed a complaint in the District Court, which he later amended. After discovery, the District Court granted summary judgment for USPS because the undisputed facts showed that Harris's claims were untimely and could not be equitably tolled. Harris appealed.

II

The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291. We review the grant of summary judgment de novo. *Cranbury Brick Yard, LLC v. United States*, 943 F.3d 701, 708 (3d Cir. 2019). A district court properly grants summary judgment if the moving party shows "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We "view the facts in the light most favorable to the non-moving party and [draw] all reasonable inferences in that party's favor." *Tundo v. Cnty. of Passaic*, 923 F.3d 283, 287 (3d Cir. 2019) (alteration in original).

III

Title VII "establishes the exclusive remedy for federal employees who allege discrimination in the workplace." *Robinson v. Dalton*, 107 F.3d 1018, 1020–21 (3d Cir. 1997). Federal employees who believe they are victims of unlawful discrimination must "initiate contact" with an EEO counselor within forty-five days of the perceived discrimination or effective date of the personnel action. 29 C.F.R. § 1614.105(a)(1). This

time limitation is "in the nature of [a] statute of limitations." *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997). So a plaintiff's failure to timely exhaust administrative remedies bars his subsequent claim in federal court.

USPS made employees aware of the exhaustion rule in four ways. First, through statutorily mandated employee trainings that Harris twice received but does not recall. Second, through a poster placed near the employee entrance next to the employee break room. Third, through the USPS Employee and Labor Relations Manual going back to at least 2016. Last, through Publication 133, which the employee manual cites.

A

The limitations period for Harris's wrongful-termination claim began on the "effective date" of the personnel action. Here, the "effective date" of the personnel action was arguably one of three different dates: (1) the day Harris received notice of his removal (June 14, 2019); (2) the date USPS' removal letter said his removal was effective (July 20, 2019); or (3) the day the union said removal was effective (August 19, 2019). Because Harris didn't contact the EEO counselor until September 9, 2019, the only one of these alternatives that would make his claim timely is the date the union said removal was effective (August 19, 2019).

But the union's grievance procedure initiated by a complainant has no bearing on the "effective date" for purposes of Title VII. In *Delaware State College v. Ricks*, 449 U.S. 250 (1980), the Supreme Court noted that "limitations periods normally commence when the *employer's* decision is made." *Id.* at 261 (emphasis added). Relevant here, the Court held that "the pendency of a grievance, or some other method of collateral review

4

of an employment decision, does not toll the running of the [Title VII] limitations periods." *Id*.

In another context, the Supreme Court acknowledged the distinction between the "effective date" of a personnel action and the date that a party gives notice of the action. *Green v. Brennan*, 578 U.S. 547, 564 (2016). The "effective date" is the date the employer designates as the employee's final removal date. *See Smith v. Potter*, 445 F.3d 1000, 1007 (7th Cir. 2006), *abrogated on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). This reading accords with the plain text of the regulation. "A statute, order, or contract is often said to be effective beginning (and perhaps ending) at a *designated* time." Effective, *Black's Law Dictionary* (11th ed. 2019) (emphasis added). Here, USPS explicitly stated in its notification of Harris's removal that he "will be removed from the Postal Service *effective* July 20, 2019." App. 92 (emphasis added). Therefore, Harris's contact with the EEO counselor on September 9, 2019 was untimely because it occurred more than forty-five days after the effective date.[2]

B

---

[2] The above case law could arguably lead to the conclusion that two dates could trigger the 45-day deadline to contact an EEO counselor: June 14, 2019 or July 20, 2019. The June 14 date would apply if we adopted the view that the period begins to run when the allegedly discriminatory decision was made and communicated to Harris. *See Green*, 578 U.S. at 556; *Ricks*, 449 U.S. at 258. The July 20, 2019 date would apply if the period begins to run at the effective date of the personnel action. *See Smith*, 445 F.3d at 1007. Here, the notice of removal states that Harris would "be removed from the Postal Service *effective* July 20, 2019." App. 92 (emphasis added). But under either date, Harris's contact with the EEO counsel was untimely as it occurred on September 9, 2019, more than forty-five days after either date.

The limitations period for Harris's hostile work environment claim began on "the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). The limitation period for Harris's hostile work environment claim began no later than the last day Harris was at his workplace. *See Gunby v. Pennsylvania Elec. Co.*, 840 F.2d 1108, 1122 (3d Cir. 1988) ("The primary objective of Title VII is the elimination of discrimination in the *workplace*." (emphasis added)). Harris's last day was April 22, 2019. On that date, USPS issued him "written notification of [his] placement in an emergency, off-duty non-pay status effective April 20, 2019." App. 90. The District Court was therefore correct to conclude that Harris's EEO contact on September 9, 2019 fell beyond the forty-five-day limitation period.

C

The forty-five-day period for initiating EEO contact may be equitably tolled if the employee: (1) "was not notified of the time limits and was not otherwise aware of them," (2) "did not know and reasonably should not have . . . known that the discriminatory matter or personnel action occurred," (3) "despite due diligence . . . was prevented by circumstances beyond his . . . control from contacting the counselor within the time limits," or (4) shows "other reasons considered sufficient by the agency or the Commission." 29 C.F.R § 1614.105(a)(2).

> Title VII requires that
> [e]very employer, employment agency, and labor organization . . . post and keep posted in conspicuous places upon its premises where notices to employees, applicants for employment, and members are customarily posted a notice to be prepared or approved by the Commission setting forth excerpts from or, summaries of, the pertinent provisions of [Title VII] and information pertinent to the filing of a complaint.

42 U.S.C. § 2000e-10.[3]

Here, USPS conspicuously displayed Poster 72 on an employee bulletin board just inside the employee entrance to the facility, next to the employee break room where employees enter and exit the facility. Harris also attended two trainings and had access to Publication 133 that apprised him of the relevant time limits. So Harris was "notified of the time limits" even though he insists he was not otherwise aware of them. 29 C.F.R § 1614.105(a)(2). There is no basis to toll the time period.

D

Finally, Harris contends that until the Supreme Court's decision in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), the Title VII process was unavailable to him so the limitations period should be tolled. He is incorrect. The Supreme Court's interpretation of Title VII's substantive provisions does not affect whether Harris had notice of the timeliness requirement. *See Bostock*, 140 S. Ct. at 1738 ("We must determine the ordinary public meaning of Title VII's command."); *cf. Wisconsin Cent.*

---

[3] The implementing regulation essentially parrots the statute:

> Every covered entity shall post and keep posted in conspicuous places upon its premises where notices to employees, applicants for employment, and members are customarily posted a notice to be prepared or approved by the Commission setting forth excerpts from or, summaries of, the pertinent provisions of this regulation and information pertinent to the filing of a complaint.

29 C.F.R. § 1635.10(c)(2).

*Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018) ("[E]very statute's *meaning* is fixed at the time of enactment.").[4]

\* \* \*

We will affirm the District Court's order granting summary judgment.

---

[4] Moreover, Harris' argument is belied by the fact that on December 13, 2019 (before the *Bostock* decision), Harris brought a claim in his complaint for sexual orientation discrimination under Title VII, which shows he was aware of the claim and believed it was nonfrivolous before *Bostock* was decided.