UNPUBLISHED ORDER

Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 3, 2006
Decided November 6, 2006

**Before**

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-4743

| | |
|---|---|
| GARY ARMSTRONG,<br>          *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Eastern District of Wisconsin. |
| *v.* | No. 03 C 581 |
| CITY OF MILWAUKEE,<br>          *Defendant-Appellee.* | Rudolph T. Randa,<br>*Chief Judge.* |

**O R D E R**

Gary Armstrong sued his employer, the City of Milwaukee ("the City"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that he was denied two promotions because he is black. The district court granted summary judgment for the City. We affirm.

**I.**

This court reviews the facts in a light most favorable to Armstrong. *See Smith v. Potter*, 445 F.3d 1000, 1006 (7th Cir. 2006). The City's Department of Neighborhood Services ("the Department") oversees, among other things, citywide zoning, code enforcement and compliance, and residential and commercial building construction and condemnation. Armstrong began working in the Department (or, at least, its previous incarnation) in 1977. He held several different positions within the Department, the most recent being "Special Enforcement Inspector." As

pertinent to this appeal, beginning January 2001 Armstrong applied for two promotions within the Department: "Program Assistant Supervisor-Commercial Code Enforcement" and "Building Construction Inspection Assistant Supervisor for Condemnation Services."

### A.     "Program Assistant Supervisor-Commercial Code Enforcement" Promotion

In January 2001, Armstrong applied for a promotion to "Program Assistant Supervisor-Commercial Code Enforcement," a managerial position in the Department's Commercial Inspection Division. He was invited to interview for the position after it was determined that he possessed the requisite qualifications, though seniority within the Department was not considered. Five applicants including Armstrong were invited to interview; he was the only black male.

At the time of the interview, Armstrong had been employed with the Department for 23 years, and had been a Special Enforcement Inspector for ten. According to Armstrong, some of his "achievements" as Special Enforcement Inspector were: "[a]ssist[ing] with management and supervisory" determinations; "[r]epresent[ing] the [Department] at community meetings and other public forums to discuss enforcement problems [and] strategies"; "[r]eview[ing] inspection paperwork" and "[m]onitor[ing] inspectors' workloads"; and "mentor[ing], train[ing], evaluat[ing], over[seeing], and monitor[ing] the performance of specific Code Enforcement Inspectors and Interns." He has a Bachelor of Arts in finance and is state-certified to inspect commercial and residential buildings to ensure compliance with the uniform dwelling and fire codes. He also served as a union steward and was later elected union president.

The interview was with an "advisory panel" consisting of four individuals (two black and two white), including the Supervisor of the Commercial Code Enforcement Section, Tracy Williams. The panel was charged with recommending to Williams which applicant should receive the promotion, but Williams herself had the last word as to that choice. The panel asked each applicant the same ten questions, and during the interview the panel members took notes on the applicants' answers (some of the panel members gave the applicants numerical scores in what appears to be attempts to rate the answers). After the interviews concluded, the panel members met to discuss each applicant's qualifications and interview performance. The panel ultimately recommended that Karen Jacobs, a white female, receive the promotion. Based on this recommendation, Williams interviewed Jacobs a second time, and later recommended to her supervisor that Jacobs be promoted.

The panel believed that Jacobs gave a superior interview. Although one panel member's notes were critical of some of Jacobs's answers, the panel as a whole believed that she had great experience and interviewed well. Namely, Jacobs was an inspector with the department for ten years, and during that time she received a "City Innovation Award" for her work developing a centralized complaint system for mentally ill tenants and homeowners. The panel opined that during her interview she "gave relevant, concise and thoughtful answers," outlined her experience, and set forth her leadership roles in several special projects within the department.

In contrast, the panel believed that Armstrong interviewed poorly. Although some panel members' notes were somewhat positive, the panel members agreed that he was "passive in his demeanor, failed to make eye contact, and provided short answers." In response to questions, he gave only general, unresponsive answers, and when he was invited to draw attention to any of his achievements, he declined to elaborate and discuss them. Moreover, when the panel asked Armstrong to "elaborate on his unresponsive answers, [he] declined." One panel member initially believed that Armstrong was the strongest candidate, but then even he eventually agreed that Jacobs gave the best interview.

## B.   "Building Construction Inspection Assistant Supervisor for Condemnation Services" Promotion

In April 2003, Armstrong applied for a promotion to "Building Construction Inspection Assistant Supervisor for Condemnation Services," another managerial position in the Commercial Inspection Division. As with the "Program Assistant Supervisor-Commercial Code Enforcement" position, this promotion did not consider the applicants' seniority. Armstrong and six other applicants possessing the requisite qualifications were invited to interview for the position; again, he was the only black male applicant. The interview was with a panel of three individuals (two white and one black, and again including Williams), but this time the panel was charged with making the ultimate recommendation for the promotion. During the interview each applicant was asked the same ten questions, and, unlike the "advisory panel" that interviewed Armstrong for the "Program Assistant Supervisor-Commercial Code Enforcement" position, each panelist ranked the applicants according to a numerical score.

After the interviews concluded, the panel unanimously recommended Chris Kraco, a white male, for the promotion; two panel members ranked Kraco as the highest scoring applicant, and the third member ranked him third highest. The panel believed that Kraco offered insightful responses during his interview, was engaged and talkative, and made eye contact. The panel also believed that his 15 years of experience in construction and two years of experience as an inspector in

the Department's Condemnation Section served him well because the position required a familiarity with the demolition bidding process, building construction, and condemnation procedures.

The panel likewise believed that Armstrong interviewed poorly. Each panelist placed Armstrong in his or her bottom three applicants, and Williams ranked him as the lowest. According to the panelists, Armstrong's answers were short (no more than one or two sentences) and unresponsive. Moreover, the panel members thought that his demeanor was passive, and noted that he failed to make eye contact during the interview. After this interview, one of the panel members approached Armstrong and offered to personally help him improve his interviewing techniques; Armstrong declined the assistance.

### C.    Armstrong's Complaint and the District Court's Grant of Summary Judgment

Armstrong filed his civil rights claim in June 2003, claiming, among other things, that he was denied the two promotions because of his race.[1] After the close of discovery, the City moved for summary judgment, which the district court granted in November 2005. In a thorough 53-page order, the district court determined, among other things, that although Armstrong successfully established the first three elements of a *prima facie* case of discrimination under *McDonnell-Douglas v. Hill*, 411 U.S. 792 (1973), he failed to establish the fourth element—that either Jacobs or Kraco were similarly or less qualified than he. The court went on to state that, even if Armstrong could establish a *prima facie* case, the City articulated a legitimate nondiscriminatory reason for promoting Jacobs and Kraco

---

[1]     In all, Armstrong alleged that he had been passed over for promotions to eight different positions because of his race and sex, and was subjected to acts of retaliation and a hostile work environment in response to bringing suit. The district court dismissed as untimely Armstrong's claims regarding promotions to four positions. The court then dismissed the claims regarding the promotions to the remaining four positions based on Armstrong's failure to establish a *prima facie* case of race or sex discrimination. It likewise dismissed Armstrong's retaliation claims because he failed to make a *prima facie* case. Finally, the court dismissed Armstrong's hostile work environment claim for failure to state a claim. Because Armstrong challenges only the district court's grant of summary judgment regarding the promotions to "Program Assistant Supervisor-Commercial Code Enforcement" and "Building Construction Inspection Assistant Supervisor," he thus has abandoned any argument concerning the other six promotions, his retaliation claims, and his hostile work environment claim. *See Blise v. Antaramian*, 409 F.3d 861, 866 n.3 (7th Cir. 2005).

by deeming them the best applicants according to a variety of factors, and that Armstrong failed to demonstrate that this reason was pretext.

## II.

On appeal Armstrong argues that the district court erred by concluding that he failed to establish the fourth element of a *prima facie* case of racial discrimination under *McDonnell-Douglas*. Specifically, he asserts that the strength of the "objective" evidence (that is, presumably, his educational and professional history) creates a genuine dispute of material fact whether he was "at least" as qualified as either Jacobs and Kraco, despite the panel members' "subjective" reasons for Jacobs's or Kraco's promotion (namely, that they gave better interviews). He also contends that the "subjective" reasons for promoting Jacobs and Kraco are (1) contradicted by the one panel member's notes that were critical of Jacobs, and (2) unreliable because they were offered only in affidavits prepared years after the interviews took place.

We review a district court's grant of summary judgment *de novo*, *see Smith*, 445 F.3d at 1006, and will affirm the judgment if the record establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," *see* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The non-moving party—that is, Armstrong—must rely on more than mere assertions, and must instead present specific facts to establish a genuine issue of material fact. *See Celotex*, 477 U.S. at 322.

As pertinent here, to establish the fourth element of a *prima facie* case of racial discrimination, a plaintiff must show that an individual outside of his protected class was promoted who was similarly or less qualified than the plaintiff. *See Jordan v. City of Gary*, 396 F.3d 825, 833 (7th Cir. 2005); *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001). But Armstrong fails to show that there is a genuine dispute over whether Jacobs or Kraco were similarly or less qualified than he. He asserts only that his "objective" educational and professional accomplishments trump the "entirely subjective" reasons for promoting Jacobs and Kraco, thus creating an issue of fact whether he was more qualified for the promotion. He does not explain how his "objective" accomplishments exceed those of Jacobs and Kraco; his brief merely recites without elaboration what he deems to be his professional accomplishments over the past ten years, and counsel failed to expand upon this point at oral argument. Moreover, Armstrong's attack on the "subjective" reasons for promoting Jacobs and Kraco is meritless; we, along with other courts of appeals, have squarely rejected similar attacks on employers' use of "subjective" criteria, and stated that nothing in Title VII prohibits employers from relying on such criteria when promoting individuals. *See Blise*, 409 F.3d at 868; *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176 (7th Cir. 2002) ("[A] court's 'role is to

prevent unlawful hiring practices, not to act as a "super personnel department" that second-guesses employers' business judgments.'" (quoting *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999)).

Reduced to its essence, Armstrong's argument that he was "at least" as qualified for the promotions as Jacobs and Kraco relies on nothing more than his own estimation of his qualifications. Such self-serving assertions carry no evidentiary value when attempting to prove racial discrimination through the *McDonnell-Douglas* analysis. *See Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 602 (7th Cir. 2001). Nor do they sufficiently raise a genuine issue of material fact to defeat summary judgment. *See Celotex*, 477 U.S. at 322; *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002).

## III.

Because Armstrong failed to establish a *prima facie* case of racial discrimination, we need not address his argument that the City's reasons for promoting Jacobs and Kraco are pretext for radical discrimination. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 327 (7th Cir. 2002). We accordingly AFFIRM the district court's grant of summary judgment.