**Quentin KELLY, Jerry Smith, Ray B. Hill, et al., Plaintiffs–Appellants,**

v.

**CITY OF CHICAGO, an Illinois municipal corporation, Michael Collins, Gene Dembowski, et al., Defendants–Appellees.**

No. 92–2783.

United States Court of Appeals, Seventh Circuit.

Argued April 15, 1993.

Decided Sept. 7, 1993.

Rehearing Denied Oct. 13, 1993.

Howard Joseph, Chicago, IL (argued), for plaintiffs-appellants.

Robert W. Barber, Jean Dobrer, (argued) and Kelly R. Welsh, Asst. Corp. Counsels, Taryn Springs, Benna R. Solomon, John F. McGuire, Asst. Corp. Counsel, Office of Corp. Counsel, Appeals Div., Chicago, IL, for defendants-appellees.

Before CUMMINGS, MANION, and RONEY,* Circuit Judges.

MANION, Circuit Judge.

The City of Chicago revoked a bar's liquor license based on a pending criminal prosecution for drug activity at the bar. After being acquitted in a criminal trial, the bar's owners and others implicated in the criminal prosecution filed a lawsuit, making a state claim based on malicious prosecution, and a federal claim based on 42 U.S.C. § 1983. The district court granted summary judgment on the federal claim, concluding that it was time-barred by the Illinois two-year statute of limitations, and dismissed the pendent state claim for lack of jurisdiction. We affirm.

## I. Facts

Ray B. Hill and Kenneth J. Doyle owned *The Club LaRay,* a bar on North Halsted Street in Chicago. In February 1988, the Chicago police began to investigate possible drug activity at the bar. Officers Michael Collins, Gene Dembowski, Eric Davis, and Ronald Steiben participated in the investigation. On March 6, 1988, Officer Dembowski swore to an affidavit stating that Quentin Kelly, Jerry Smith and Hill had delivered cocaine and that Hill had possessed cocaine in violation Illinois law. On April 27, the Criminal Court of Cook County determined that there was no probable cause to prosecute Hill. On May 11, 1988, the state of Illinois initiated a prosecution against Kelly and Smith for delivery of cocaine. They were tried between April 24 and April 27, 1990, and the jury returned a not guilty verdict.

During the early stages of the prosecution—on June 20, 1988—the City of Chicago Liquor License Commission ("the Commission") charged *The Club LaRay* and Doyle with violations of state laws. On September 1, 1988, after a public hearing, the Commission revoked *The Club LaRay's* liquor license.[1] The owners of the bar appealed this decision in the Illinois state court system. The Commission did not enforce the license revocation order during this appeal process. The Circuit Court of Cook County affirmed the Commission's revocation order on April 19, 1989. The City of Chicago ordered enforcement of the revocation order on July 27, 1989, and closed the bar the same day.

The plaintiffs filed their complaint in this case on November 15, 1990. They made two claims: a state law claim for malicious prosecution, and a federal claim under 42 U.S.C. § 1983 for violation of their Fourteenth Amendment right to due process. The plaintiffs base their second claim on the police officers' actions leading to the revocation of *The Club LaRay's* liquor license. They claim the police officers intentionally lied about drug activity at the bar in order to deprive them of their property right in the liquor license. The district court dismissed the section 1983 claim based on the statute of limitations, and declined to exercise jurisdiction over the pendent state claim. The court determined that the section 1983 claim accrued upon revocation of the liquor license on September 1, 1988. Because the complaint was filed more than two years after that date, the claim was time-barred.

The plaintiffs appeal the district court's dismissal. They argue that July 27, 1989—the day the bar was actually closed—was the day their section 1983 claim accrued. Because they filed a complaint within two years of that date, they argue that their claim is not time-barred.

## II. Analysis

■ We review the grant of a Rule 12(b)(6) motion to dismiss *de novo. Caldwell v. City of Elwood,* 959 F.2d 670, 671 (7th Cir.1992). "We view all facts alleged in the complaint, and all reasonable inferences that

---

* Hon. Paul H. Roney, Circuit Judge for the Eleventh Circuit, is sitting by designation.

1. The order of revocation stated the criminal charges, and then unequivocally revoked the license, using the following language:

   IT IS THEREFORE ORDERED that the City of Chicago Retail Liquor License and all other City Licenses, issued to: The Club LaRay, Citadel Enterprises, Ltd., Kenneth J. Doyle, Pres. for the premises located at 3150 N. Halsted, be, and the same is, hereby REVOKED. September 1, 1988.

may be drawn from them, in the light most favorable to the plaintiff." *Id.* Courts look to the personal injury laws of the state where the injury occurred to determine the statute of limitations in a section 1983 case. *Wilson v. Garcia,* 471 U.S. 261, 280, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985). Illinois has a two-year statute of limitations for personal injury claims, Ill.Ann.Stat. ch. 735, para. 5/13–202 (Smith–Hurd 1993). Therefore, section 1983 claims arising in Illinois are governed by a two-year statute of limitations. *See Farrell v. McDonough,* 966 F.2d 279 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1059, 122 L.Ed.2d 364 (1993); *Kalimara v. Illinois Dept. of Corrections,* 879 F.2d 276 (7th Cir.1989). Courts also apply the tolling laws of the state where the injury occurred. *Hardin v. Straub,* 490 U.S. 536, 543, 109 S.Ct. 1998, 2002, 104 L.Ed.2d 582 (1989). Federal law, however, governs the accrual of claims. *Wilson v. Giesen,* 956 F.2d 738, 740 (7th Cir.1992).

### A. Accrual

In this case, the Commission revoked *The Club LaRay's* liquor license on September 1, 1988. The authorities did not execute the revocation order by closing the bar until after all judicial remedies were exhausted—on July 27, 1989. The question presented is one of law: when does a section 1983 action based on the revocation of a liquor license accrue? If it accrues at the time of the revocation, then the plaintiffs filed their complaint too late. But if it accrues at the time the bar actually is closed, then the plaintiffs filed suit within the two-year statute of limitations.

■ Section 1983 claims "accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Wilson* at 740; *see also Diaz v. Shallbetter,* 984 F.2d 850, 855 (7th Cir.1993) ("[E]very constitutional tort actionable under § 1983 is treated as a personal injury, with the claim accruing when the injury is inflicted."). Our first task in determining the accrual date of a section 1983 case is to identify the injury.

*LaFonte–Rivera v. Soler–Zapata,* 984 F.2d 1, 3 (1st Cir.1993). Once that is done, we determine the date when the plaintiff could have sued for that injury. That date should coincide with the date the plaintiff "knows or should have known" that his rights were violated.

In this case, the plaintiffs allege that police officers maliciously lied to prosecutors to cause the revocation of a liquor license. From this allegation they build a procedural due process claim. First, they maintain they were deprived of property—a liquor license constitutes property for the purposes of the Fourteenth Amendment. *Reed v. Village of Shorewood,* 704 F.2d 943, 949 (7th Cir.1983). Next, they claim that because the license termination proceedings turned on the police officers' perjured testimony, they were not given due process.

It is not difficult to discern the injury from these allegations. The plaintiffs claim they were injured when the license was revoked, which happened on September 1, 1988. When they continued to operate past that date, they did not do so under a valid liquor license. They did so, really, at the grace of city officials, who could have closed the bar at any time by enforcing the revocation order.[2] Although the plaintiffs had a property right in the liquor license, they had no property right in the continued forbearance of Chicago officials. Eventually—after the plaintiffs had failed in the state appeals process—the City's grace ran out, and it closed the bar based upon the previous license revocation. The plaintiffs certainly could have filed a section 1983 suit on September 1, 1988, claiming their liquor license was revoked without due process. *Cf. Reed,* 704 F.2d at 949 ("the plaintiffs were deprived of their property right in the license even though the license was never actually revoked.").

So what effect, if any, does the availability of a state appeals process have on the accrual date of a section 1983 claim based on a license revocation? In *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66

---

**2.** The plaintiffs present no law which required the city officials to refrain from closing the bar until the appeals process was exhausted.

L.Ed.2d 431 (1980), the Supreme Court confronted a similar question, and its decision is instructive in this case. In March 1974, Delaware State College's Board of Trustees voted to deny tenure to Columbus Ricks, a black Liberian faculty member. Ricks then filed a grievance with the Board's Educational Policy Committee, which took the matter under advisement. Consistent with its usual practice when a teacher is denied tenure, the College gave Ricks a one-year "terminal" contract to expire on June 30, 1975. The Education Policy Committee then denied Ricks's grievance. On April 4, 1975, he filed an employment discrimination claim with the Equal Employment Opportunity Commission, which issued a right-to-sue letter more than two years later.

After that, on September 9, 1977, Ricks filed a federal lawsuit, claiming that the College violated his civil rights by denying him tenure. The district court dismissed the suit as untimely based on the applicable three-year statute of limitations. The Third Circuit reversed, holding that the suit did not accrue until the terminal contract expired on June 30, 1975. *Ricks v. Delaware State College,* 605 F.2d 710 (3rd Cir.1979). The court based its decision mostly on what it considered public policy concerns, reasoning that an accrual date of the last day of employment rather than the day of the adverse employment decision would provide a "bright line guide both for the courts and for the victims of discrimination." *Id.* at 712–13.

The Supreme Court granted certiorari, 444 U.S. 1070, 100 S.Ct. 1012, 62 L.Ed.2d 751, and reversed, holding that the alleged unlawful employment practice happened on the day Ricks was denied tenure and not on the day he happened to leave the job. *Delaware State College,* 449 U.S. at 259, 101 S.Ct. at 504–505. The Court specifically concluded that "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* at 257, 101 S.Ct. at 504. The Court also considered whether Ricks's pursuit of the grievance procedures postponed the date of accrual, or somehow tolled the statute of limitations. The Court rejected those possibilities: "We already have held

that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods.... The existence of careful procedures to assure fairness in the tenure decision should not obscure the principle that limitations periods normally commence when an employer's decision is made." *Id.* at 261, 101 S.Ct. at 506 (citation omitted).

In *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), the Supreme Court applied its holding in *Ricks,* which involved Title VII and 42 U.S.C. § 1981, to a case involving section 1983. There, a group of non-tenured administrators in the Puerto Rico Department of Education claimed they were fired for political reasons, in violation of their First Amendment rights. Their claim was governed by a one-year statute of limitations. They filed suit more than one year after they were told of the decision to terminate, but within one year of the time they actually left their jobs. The First Circuit attempted to distinguish *Ricks,* reasoning that the injury in *Ricks* was the date of the adverse employment decision, while the injury to the nontenured administrators took place when they actually left their jobs. The Supreme Court disagreed, finding the two cases "indistinguishable." *Chardon,* 454 U.S. at 8, 102 S.Ct. at 29. The Court summarized its holding in *Ricks* in a manner applicable to this case: "[i]n *Ricks,* we held that the proper focus is on the time of the *discriminatory act,* not the point at which the *consequences* of the act became painful." *Chardon,* 454 U.S. at 8, 102 S.Ct. at 29 (emphasis in original).

■ In this case, as in *Chardon,* the date of the alleged constitutional violation—the revocation of the license—was the date of accrual. The date the consequences of that violation became painful—when the bar was closed because it was operating without a liquor license—was not the date of accrual. The availability of a state appeals process had no different effect on the accrual date than the availability of the grievance procedures in *Ricks.* Just because the state believed that fairness compelled it to allow judicial review of its decision to revoke the

liquor license, does not mean that the date of injury is postponed until exhaustion of the appeals process. The injury occurred at the time of the revocation; tellingly, it is that very injury which caused the bar owners to avail themselves of the state appeals process. They took too long to avail themselves of the federal process, and their claim therefore is time-barred. *See also Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 761–62 (9th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1161, 117 L.Ed.2d 409 (1992) (section 1983 claim based on undisclosed compensation to witnesses who testified against a criminal defendant accrued "when he first learned of the injury giving rise to his claims, and not at the [successful] completion of his habeas corpus proceeding."); *Mack v. Vareles*, 835 F.2d 995, 999 (2d Cir.1987) (section 1983 claim accrued when the plaintiff was incarcerated following an alleged deprivation of his constitutional rights at trial even though he was proceeding with a state court appeal.)

There was some discussion at oral argument that the actual closing of the bar, rather than the revocation of the liquor license, was an independent property deprivation which precipitated the constitutional claim. If so, the date of accrual becomes the date the bar closed. But when the bar was closed, it was operating without a liquor license. Does the state effect a deprivation of property when it closes a bar which is operating without a liquor license? Nobody in Illinois has an inherent property right to sell liquor. The state confers that right only upon successful liquor license applicants. Bar owners who find their liquor license revoked are injured at the time of revocation—that is the time they lose any property right they possess to sell liquor. If they continue to sell liquor, it is not under a property right. The state may then intervene at any time to stop the sale. By intervening to close a bar which has had its liquor license revoked, the state simply exercises its broad powers under the Twenty–First Amendment. *See Scott v. Village of Kewaskum*, 786 F.2d 338, 341 (7th Cir.1986). ("The twenty-first amendment gives states special powers over the sale of liquors, powers that have been held to diminish even rights granted by the first amendment and hence the fourteenth.")

Illinois did not effect a deprivation of property by closing *The Club LaRay* on July 27, 1989. Any deprivation of property occurred when the right conferred by the state—the right to sell liquor—was removed by the state.

## B. Discovery Rule

The plaintiffs also argue that they did not discover the police officers' perjury until after Kelly and Smith were acquitted of the state criminal charges, and therefore that the discovery rule should postpone accrual of the section 1983 claim until that day. This is simply a flawed argument. If the plaintiffs were not involved with drugs, they would have known the police officers' statements were false when they were uttered. The plaintiffs would not need to wait for the state to confirm their impeccability (by failing to prove guilt beyond a reasonable doubt) in a criminal trial before filing suit. The Order of Revocation stated the criminal charges and revoked the liquor license. The plaintiffs should have known that their license was revoked based on false charges—if they were so sure the charges were false—the day this order issued.

## III. Conclusion

Because the deprivation of property took place at the time the state revoked the liquor license, the section 1983 claim was time-barred. Therefore the judgment of the district court is

AFFIRMED.