# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 02-4041

SUSAN C. HILEMAN,

Plaintiff-Appellant,

v.

LOUIS MAZE, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 02-4059-DRH—**David R. Herndon**, *Judge.*

_____

ARGUED MAY 27, 2003—DECIDED MAY 10, 2004

_____

Before ROVNER, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* A few days before the Democratic primary election for Circuit Clerk of Alexander County, Illinois, a police raid turned up a cache of absentee ballots in the custody of County Clerk Louis Maze. Along with the ballots was extensive material indicating that Maze was opening the ballots and replacing those in favor of incumbent Susan Hileman with ballots naming her opponent, Sharon McGinness. For mysterious reasons, the seized ballots were then returned to election officials and commingled with all other ballots cast on election day, March 21, 2000. Hileman lost the election and eventually

brought this lawsuit under 42 U.S.C. § 1983 and Illinois state law on March 20, 2002, one day short of the two-year anniversary of her defeat. The district court dismissed Hileman's complaint as time-barred, finding that her claim had accrued on March 16, 2000—the date police seized the fraudulent ballots—rather than the March 21 date of the primary election. Hileman now appeals. Because we conclude that the district court erred in finding that Hileman's claim accrued at the earlier of the two dates, we reverse and remand for further proceedings.

## I

With her term as Circuit Clerk of Alexander County due to expire in December 2000, Hileman entered the Democratic primary set for March 21, 2000. Her principal competition for a spot on the ballot in the upcoming general election was defendant McGinness. On March 16, 2000, just five days before the primary, Illinois State Police executed search warrants and entered the home, office, car dealership, and truck of defendant Maze, the County Clerk. The police confiscated 681 absentee ballots for the upcoming primary, along with paraphernalia suggesting that Maze was involved in widescale election fraud aimed at unseating Hileman. The evidence suggested that Maze was, among other things, opening absentee ballots and replacing ballots cast in favor of Hileman with ballots naming her opponent, McGinness, and then re-glueing the envelopes shut.

As we noted, the police returned the seized ballots to Maze on the day of the primary, March 21, 2000. The ballots were distributed to the appropriate precincts and commingled and counted with the other ballots in the election. Hileman lost the primary election to McGinness by a count of 1299 to 1089. Hileman's first response was to file a petition in state court to contest the election. An Illinois circuit court declared the result of the primary election

invalid and ordered a new primary election to be held. The state appeals court reversed and remanded with instructions to hold an evidentiary hearing. See *Hileman v. McGinness*, 739 N.E.2d 81, 82 (Ill. App. Ct. 2000). The trial court then found that "fraud permeated the electoral process in the 2000 Democratic primary." It again declared the results of the primary election invalid, removed McGinness from office, and ordered that a new election be held.

Hileman did not run in the new primary election. Instead, on March 20, 2002, she filed suit against fourteen defendants, alleging violations of federal and state law as a result of the voting improprieties. Count I focused on defendant Maze, alleging that he violated Hileman's rights under the Fourth, Fifth, and Fourteenth Amendments to an election free from fraud, in violation of § 1983. Counts II and III asserted state-law conspiracy claims against all defendants, including Maze, under the Illinois Election Code, 10 ILCS. 5/29-17, 18. Defendants moved to dismiss Hileman's complaint for failure to state a claim. The district court granted the motion insofar as it applied to Hileman's § 1983 claim, finding that the statute of limitations had run. The court reasoned that Hileman's claims accrued on the date that the ballots were seized, March 16, 2000, rather than the date of the primary election, March 21, 2000. Because Hileman did not file her complaint until March 20, 2002, it was too late under the governing two-year period that applies to § 1983 actions in Illinois. The district court then declined to retain jurisdiction over the state-law claims (Counts II and III). This appeal followed.

## II

This case presents a single question for our consideration: did Hileman's § 1983 claim accrue on the date the ballots were seized, or on the date of the primary election? This is a question of law that we review *de novo*. See *Booker v.*

*Ward*, 94 F.3d 1052, 1056 (7th Cir. 1996); see also *EEOC v. Kentucky State Police Dep't*, 80 F.3d 1086, 1094 (6th Cir. 1996).

We described the appropriate analysis to be applied to questions of statutes of limitations and claim accrual in § 1983 actions in *Kelly v. City of Chicago*, 4 F.3d 509 (7th Cir. 1993). In general, the limitations period in a § 1983 case is governed by the personal injury laws of the state where the injury occurred. *Id.* at 511; see also *Wilson v. Garcia*, 471 U.S. 261, 279 (1985); *Hondo, Inc. v. Sterling*, 21 F.3d 775, 778 (7th Cir. 1994). Federal law, however, governs the date of accrual. *Kelly*, 4 F.3d at 511; *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). A § 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Kelly*, 4 F.3d at 511. This inquiry proceeds in two steps. First, a court must identify the injury. *Id.* Next, it must determine the date on which the plaintiff could have sued for that injury. That date should coincide with the date the plaintiff "knows or should know" that her rights were violated. *Id.*

Applying this framework, the district court first took note of the fact that Illinois has a two-year statute of limitations for personal injury claims, see 735 ILCS 5/13-202, and that this is the period to apply to a § 1983 case. That much is uncontroversial and clearly correct. Hileman's alleged injury, however, and whether she knew or should have known that her constitutional rights had been violated as early as March 16 raise more difficult questions.

It is unclear what the district court considered to be the precise injury Hileman suffered, but this question is critical to the evaluation of the sufficiency of her complaint. On the one hand, the district court might have defined the underlying right as the right to participate as a voter or candidate in an untainted election. This type of broad, abstract definition might seem to favor the appellees, since a

description of the underlying right at a high enough level of abstraction might sweep in the March 16 discovery. On the other hand, the injury might have been more concrete: the right of a voter to cast an undiluted ballot, or the right of a primary candidate to participate in an honest election in which a person could be selected as her party's candidate in the subsequent general election. This is the position Hileman takes. Even if this is the injury, however, we must still consider when, in a tainted election, the injury occurs: at the moment the first ballot is doctored, or when the tainted votes are actually counted or a winner certified?

Existing decisions on the subject are surprisingly unhelpful in answering this basic question. There is no shortage of cases proclaiming an enforceable right against various forms of election fraud, if it involves "willful conduct which undermines the organic processes by which candidates are elected," *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975), or reflects "patent and fundamental unfairness," *Bodine v. Elkhart County Election Bd.*, 788 F.2d 1270, 1272 (7th Cir. 1986) (quoting *Hendon v. North Carolina State Bd. of Elections*, 710 F.3d 177, 182 (4th Cir. 1993)). The forms of election misconduct found to have a constitutional dimension include misrepresentations by election officials or other forms of "fraud on the voters," *Rudisill v. Flynn*, 619 F.2d 692, 694 (7th Cir. 1980) (quoting *Russo v. Vasin*, 528 F.2d 27, 30 (7th Cir. 1976)); *Hennings*, 523 F.2d at 863-64, fraudulent ballot placement, *Bloomenthal v. Lavelle*, 614 F.2d 1139, 1141 (7th Cir. 1980); *Bohus v. Bd. of Election Comm'rs*, 447 F.2d 821, 822 (7th Cir. 1971), and the barring of candidates from the ballot based on disputes about the validity of petition signatures, *Briscoe v. Kusper*, 435 F.2d 1046, 1051-52 (7th Cir. 1970). Nonetheless, these cases do not answer the core characterization question at issue here. Nor can we look to criminal cases brought under the Voting Rights Act, 42 U.S.C. § 1973i. See, *e.g.*, *United States v. Cole*, 41 F.3d 303 (7th Cir. 1994); *United States v. Carmichael*,

685 F.2d 903 (4th Cir. 1982). These cases hold that the language of § 1973i authorizes prosecution even for abstract harm to the integrity of the electoral process, see *Cole*, 41 F.3d at 307, but we are wary of applying that holding to the adjudication of constitutional claims under § 1983.

We turn, therefore, to the general test for claim accrual: when did the plaintiff know, or should she have known, that her rights had been violated. *Kelly*, 4 F.3d at 511. This is a fact-intensive inquiry, in which both the surrounding circumstances and the claims plaintiff herself is trying to raise are critical. We conclude that two aspects of this case compel reversal of the district court's order dismissing Hileman's complaint as time-barred.

First, a fair reading of Hileman's complaint shows that she seeks redress as a spurned candidate, not as a voter whose franchise was diluted. Her amended complaint says that "Plaintiff was deprived of her office at the expiration of her term in December 2000." Similarly, her statement of damages in the complaint asserts that the defendants' conduct resulted in "Plaintiff's loss of her office and the benefits thereof." Thus, the injury Hileman herself alleged flowed from the denial of her status as the Democratic candidate for Circuit Clerk of Alexander County in the up-coming general election, not her right to cast an undiluted ballot in that election. In this light, Hileman's injury could not have taken place until the March 21 date of the primary election.

This becomes even more clear when we move to the second point. Hileman, or a reasonably vigilant person in her position, would have been alerted to the fact that an attempt to commit election fraud had been thwarted, rather than perpetrated, after the police seized the tainted ballots on March 16. At that moment, the logical conclusion was that the March 21 election would proceed in a lawful manner. Hileman had no reason to suspect that she had

suffered constitutional injury until she was made aware of the inexplicable decision to return the tainted ballots to County Clerk Maze, and, in turn, the decision to commingle those ballots with the untainted ones. Because Hileman could have reasonably believed that fraud had been averted, and because she could have held this belief right up to the moment of the commingling and counting of the ballots on March 21 (perhaps later, depending on when she learned of the decision to commingle the ballots), we find that Hileman neither knew nor should have known that her constitutional rights had been invaded until the day of the primary election.

Notwithstanding these circumstances, the appellees argue that this court's decision in *Kelly* compels affirmance of the district court. *Kelly*, however, offers more support to Hileman than to her adversaries. In *Kelly*, plaintiffs alleged that police officers lied at a hearing and that this resulted in the revocation of their liquor license by the Chicago Liquor License Commission and, several months later, the closure of their bar by way of an enforcement order. The question presented was whether plaintiffs' § 1983 claim accrued at the time of the Commission's revocation of the license, or at the moment of its eventual enforcement. *Kelly*, 4 F.3d at 511-12. We found that it was the former, relying on language from the Supreme Court that "the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act became painful." *Id.* at 512 (citing *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981), and *Ricks v. Delaware State Coll.*, 449 U.S. 250, 258 (1980)) (emphasis in original).

Taking their cue from this distinction, the appellees argue that the alleged discriminatory act of doctoring the ballots took place at the beginning of the conspiracy, and that it merely became "more painful" for Hileman on election day. But the pre-election efforts to tamper with the ballots might have amounted to nothing at all, if the police had retained

custody of the fraudulent materials; those acts were nothing at all like the formal decision of an administrative body to revoke a license. *Kelly* relied crucially on *Chardon*, where the Supreme Court held that it is the "operative decision" by the state actor that is the moment of injury. See *Chardon*, 454 U.S. at 8. Here, the "operative decision" occurred at the moment when the state officials decided to commingle the fraudulent ballots with the legitimate ballots, irrevocably tainting the results of the election. Prior to that, the alteration of the ballots was only an attempted election fraud conspiracy that may or may not have come to fruition in the Alexander County primary. Of course, this does not mean that the decision to amass and doctor absentee ballots was not a decision on the part of the alleged conspirators. In fact, the mere gathering of the ballot-altering paraphernalia seized in the March 16 raid might have been enough to support a criminal prosecution of some or all of the defendants under 18 U.S.C. § 241. *United States v. Redwine*, 715 F.2d 315, 320 (7th Cir. 1983). But this is a § 1983 case focusing on injury to Hileman's rights, not a conspiracy prosecution under § 241 focusing on the wrongful acts of the defendants. Under *Chardon*, it was the decision to return the tainted ballots and commingle them with the untainted versions that was the "operative decision" for accrual purposes.

The facts of *Kelly* support our decision in a further respect. In *Kelly*, the Commission's vote to revoke plaintiffs' liquor license made enforcement relatively certain. Indeed, the Commission's decision had binding legal effect upon its passage, even though the City chose to postpone enforcement of the revocation order until all appeals had been exhausted. See *Kelly*, 4 F.3d at 511 & n.2. By contrast, the police seizure of the absentee ballots on March 16 might have thwarted, rather than perpetrated, the massive election fraud in the primary election. This merely underscores our point that a reasonable plaintiff in Hileman's

position could have received the news of the police seizure on March 16 with a sigh of relief, rather than the indignation of one whose constitutional rights have been violated.

Finally, the appellees claim that Hileman is conflating the concepts of injury and damages. They point out, accurately enough, that the Supreme Court has held that even the most abstract procedural harms can support a due process claim, *Carey v. Piphus*, 435 U.S. 247, 267 (1978), but that damages in § 1983 actions must flow from concrete harms, *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 310 (1986). In effect, appellees assert that Hileman suffered legally cognizable injury on March 16, and that any further legal detriment—including her denial of status as a candidate in the general election—was merely the loss that followed the earlier injury. But, as we have already pointed out, Hileman did not suffer any concrete harm, procedural or otherwise, until the commingling and counting of the tainted ballots. It is appellees who are doing the conflating, by refusing to acknowledge what Hileman is complaining about.

## III

For these reasons, we REVERSE the district court's order dismissing Hileman's complaint. With the federal claims reinstated, the district court should also revisit on remand its decision not to retain supplemental jurisdiction over Hileman's state-law claims under 28 U.S.C. § 1367.

A true Copy:

    Teste:

 

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*