# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-1296

JOHNNIE LEE SAVORY II,

*Plaintiff-Appellant,*

*v.*

KEVIN W. LYONS, in his official capacity as the
State's Attorney for Peoria County, Illinois,
CITY OF PEORIA, GARY POYNTER, in his official
capacity as Chief of Police of City of Peoria,
ROBERT SPEARS, in his official capacity as
Clerk of the Peoria County Circuit Court,
and PEORIA COUNTY, ILLINOIS,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 05 C 2082—**Michael P. McCuskey**, *Chief Judge.*

ARGUED SEPTEMBER 11, 2006—DECIDED NOVEMBER 29, 2006

Before RIPPLE, KANNE, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* Johnnie Lee Savory II was
convicted of murder in 1977, and is currently serving
concurrent terms of forty to eighty years in Illinois. Savory
appeals the dismissal of his suit seeking access to the
physical evidence in his case for the purposes of DNA
testing. He filed this civil rights suit pursuant to 42 U.S.C.
§ 1983 in the Central District of Illinois on April 4, 2005

alleging that the government's refusal to grant access to the physical evidence violates his federal constitutional rights. The district court found that Savory otherwise stated a claim for relief pursuant to § 1983, but that his case was barred by the statute of limitations. We also find, without deciding whether prisoners have a post-conviction right of access to physical evidence, that claims seeking such access are cognizable under § 1983, but that the statute of limitations is a bar in this case. We therefore affirm.

## I. BACKGROUND

James Robinson and Connie Cooper were found dead in their home in Peoria, Illinois on January 18, 1977. Savory, who was just fourteen at the time, was tried and convicted for the murder that June. His original conviction was reversed by the Appellate Court of Illinois due to the introduction at trial of an involuntary confession that was obtained in violation of *Miranda*. *People v. Savory*, 403 N.E.2d 118 (3d Dist. Ill. App. Ct. 1980). Savory was re-tried and convicted in 1981. At the second trial, three of Savory's friends testified that he had made inculpatory statements to them. The physical evidence presented by the state included hairs found at the crime scene that were similar to Savory's, a knife found in Savory's home with trace amounts of blood on it, and a pair of pants Savory may have worn bearing a bloodstain of the same type as the female victim's blood.

Since his second trial, Savory has unsuccessfully sought relief from his conviction and sentence through direct appeal, *People v. Savory*, 435 N.E.2d 226 (2d Dist. Ill. App. Ct. 1982), state post-conviction proceedings, *People v. Savory*, No. 3-90-0059 (3d Dist. Ill. App. Ct. July 21, 1991), federal habeas corpus proceedings, *United States ex rel. Savory v. Lane*, No. 84-8112, 1985 WL 2108 (N.D. Ill. July 25, 1985), *aff'd*, 832 F.2d 1011 (7th Cir. 1987); *Savory v.*

*Peters*, No. 94-2224, 1995 WL 9242 (N.D. Ill. January 9, 1995), petition for writ of mandamus, *Savory v. McMorrow*, No. M 11055 (Ill. Jan. 21, 2004), and petition for executive clemency.

Savory also filed a motion in the Circuit Court for Peoria County, Illinois in 1998 pursuant to 725 ILCS 5/116-3 seeking DNA testing of the physical evidence in his case. The Illinois circuit court determined on July 7, 1998 that testing was not warranted under the terms of the statute. *People v. Savory*, No. 77 CF 565, July 7, 1998, Order (unpublished). The appellate court and the Illinois Supreme Court upheld the order on Dec. 17, 1999 and Oct. 1, 2001 respectively. *People v. Savory*, 722 N.E.2d 220 (3d Dist. Ill. App. Ct. 1999); 756 N.E.2d 804 (Ill. 2001).

On April 4, 2005, Savory filed suit pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated by Kevin W. Lyons, State's Attorney of Peoria County, Illinois, Robert Spears, Clerk of the Tenth Judicial Circuit Court of Illinois, Gary Poynter, Chief of Police of the City of Peoria, the City of Peoria, and Peoria County, Illinois (collectively "Peoria") by refusing Savory access to the physical evidence in his case.[1] The constitutional rights upon which Savory relies are procedural due process, substantive due process, and a right to prove actual innocence. Savory seeks to compel production of: (1) a pair of bloodstained pants; (2) hair samples; (3) a pocketknife with traces of blood on it; and (4) samples taken from Savory, his father, and others from whom samples were collected. The district court dismissed all claims pursuant to FED. R. CIV. P. 12(b)(6), determining that the two-year statute of limitations had run because the claims accrued no later

---

[1] The district court dismissed all claims against Gary Poynter, Chief of Police of the City of Peoria, as redundant of the claims against the City of Peoria, which Savory does not dispute.

than July 7, 1998, the date on which the state trial court denied Savory's motion for access to testing.

## II. ANALYSIS

Savory presents four issues on appeal: (1) whether a suit to gain access to physical evidence for DNA testing is cognizable under 42 U.S.C. § 1983; (2) assuming there is a post-conviction right of access to physical evidence, whether the denial of access is a continuing violation; (3) whether equitable tolling applies in this case; and (4) whether there is a constitutional post-conviction right of access to physical evidence for testing. We review the district court's dismissal for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6) *de novo*, accepting the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). Such dismissal is only proper "where the plaintiff can prove no set of facts that would entitle him to relief." *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir. 1996)).

### A.  Cognizance of Claims under § 1983

In order to state a claim under § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law. *Lekas v. Briley*, 405 F.3d 602, 606 (7th Cir. 2005); *see Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Peoria argues that a post-conviction claim for access to physical evidence is not cognizable under 42 U.S.C. § 1983. In *Preiser v. Rodriguez*, the Supreme Court held that claims by state prisoners challenging the fact or duration of their confinement are not cognizable under § 1983, but instead are limited to habeas corpus. 411 U.S.

475, 490 (1973). Such challenges lie at the core of habeas corpus, and although the broad language of § 1983 encompasses these claims, "Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983." *Id.*; *see also Montgomery v. Anderson*, 262 F.3d 641, 643-44 (7th Cir. 2001). Of importance to the *Preiser* decision were notions of federal-state comity, in that habeas corpus requires exhaustion of state remedies, while § 1983 does not. *Preiser*, 411 U.S. at 491.

The Court elaborated upon *Preiser* in *Heck v. Humphrey*, where Heck sought money damages for an allegedly unconstitutionally secured conviction. The Court noted that a claim that "would necessarily imply the invalidity of [the plaintiff's] conviction or sentence" is not cognizable under § 1983, even if the remedy sought is not a release from confinement. 512 U.S. 477, 487 (1994). The sole avenue open to a prisoner challenging the fact or duration of his confinement, directly or indirectly, is habeas corpus. *Heck*, 512 U.S. at 481; *Preiser*, 411 U.S. at 490.

*Preiser* and its progeny have clearly and consistently emphasized that only those claims that, if successful, would "necessarily" invalidate the fact or duration of the prisoner's confinement are restricted to habeas. *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005); *Edwards v. Balisok*, 520 U.S. 641, 645 (1997); *Heck*, 512 U.S. at 486-87; *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974); *Preiser*, 411 U.S. at 500. *Wilkinson v. Dotson* is demonstrative. In *Dotson*, two state prisoners challenged the constitutionality of Ohio's state parole procedures under § 1983. 544 U.S. at 76-77. The fact that the inmates' challenges to the parole procedures were made in the hopes of securing a speedier release from prison was not enough to preclude remedy under § 1983. The Court noted: "Success for [Plaintiff] means at most a new parole hearing at which Ohio parole authorities may,

in their discretion, decline to shorten his prison term." *Id.* at 82. The focus remained on whether the § 1983 claim "necessarily" implicated the fact or duration of confinement.

The Fourth, Fifth, Sixth, Ninth, and Eleventh Circuits have considered the issue of whether a claim for post-conviction access to physical evidence is cognizable under § 1983. In *Bradley v. Pryor*, the Eleventh Circuit answered this question in the affirmative, expressly disagreeing with the Fourth Circuit's opinion in *Harvey v. Horan*, 278 F.3d 370 (4th Cir. 2002) ("*Harvey I*"). *See* 305 F.3d 1287, 1290-91 (11th Cir. 2002). The Eleventh Circuit reasoned that post-conviction DNA testing of the physical evidence in a case may not be exculpatory, and could even be inculpatory. These possibilities "suffice[ ] to establish that the asserted right of mere access is not a direct, or for that matter even an indirect, attack on one's conviction or sentence." *Id.* (quoting *Harvey v. Horan*, 285 F.3d 298, 308 (4th Cir. 2002) (Luttig, J., respecting the denial of rehearing *en banc*) ("*Harvey II*")). Furthermore, to overturn his conviction, "the petitioner would have to initiate an entirely separate action at some future date, in which he would have to argue for his release upon the basis of a separate constitutional violation altogether." *Id.* (quoting same). The Ninth Circuit adopted the reasoning from *Bradley* in *Osborne v. District Attorney's Office for the Third Judicial District*, 423 F.3d 1050, 1054 (9th Cir. 2005), finding that *Dotson* clearly explained that "*Preiser*'s implied exception to § 1983 coverage exists where the claim seeks—not where it simply relates to—core habeas corpus relief . . . ." *Id.* at 1055 (quotations omitted).

The Fourth Circuit thought it enough to preclude the use of § 1983 that a prisoner would "use his claim for access to evidence to set the stage for a future attack on his confinement." *Harvey I*, 278 F.3d at 378. In *Kutzner v. Montgomery County*, the Fifth Circuit joined the Fourth Circuit's reasoning in holding that "under *Heck*, . . . no

§ 1983 claim exists for injunctive relief to compel DNA testing." 303 F.3d 339, 340 (5th Cir. 2002) (per curium). In an unpublished opinion, the Sixth Circuit adopted the same reasoning. *Boyle v. Mayer*, 46 Fed. Appx. 340 (6th Cir. 2002).

We find the Eleventh and Ninth Circuits' interpretation and approach to be more consistent with *Preiser* and its progeny. The exception to § 1983 jurisdiction is a narrow one, designed to preserve the specific role of habeas corpus relief. *Dotson*, 544 U.S. at 81. Special attention, however, must be given to the manner in which the plaintiff frames his complaint, and the consequences that would follow from a favorable disposition. In the instant case, Savory will not be released from prison, nor will his sentence be shortened, if he successfully gains access to physical evidence for DNA testing. Such access would not imply the invalidity of his conviction. At most, he would have the opportunity to use the results of the DNA testing in a future proceeding. Thus, success in Savory's action "will *not* demonstrate the invalidity of any outstanding criminal judgment against [him]," and will not unduly intrude upon the territory of core habeas corpus relief. *Heck*, 512 U.S. at 487 (emphasis in original). Savory's suit is cognizable under § 1983.

## B.  Continuing Violation

In actions filed pursuant to 42 U.S.C. § 1983, courts look to the statute of limitations for personal injury in the state where the injury occurred. *Kelly v. City of Chicago*, 4 F.3d 509, 510 (7th Cir. 1993). Illinois personal injury actions are subject to a two-year statute of limitations. 725 ILCS 5/13-202. While the state tolling rules are used, the accrual of claims is governed by federal law. "Section 1983 claims 'accrue when the plaintiff knows or should know that his or her constitutional rights have been violated.'" *Kelly*,

4 F.3d at 511 (quoting *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992)). In *Hileman v. Maze*, we set forth a two-part inquiry for determining the accrual of claims. 367 F.3d 694, 696 (7th Cir. 2004). "First, a court must identify the injury. Next, it must determine the date on which the plaintiff could have sued for that injury." *Id.* (citations omitted). That is the date that the plaintiff knew or should have known that his constitutional rights had been violated. *Id.*

Savory clearly alleges that his injury is the denial of access to the physical evidence in his case for the purposes of scientific testing. The district court determined that the relevant accrual date was July 7, 1998, the date on which the Illinois circuit court denied Savory's request for DNA testing under Illinois law. Absent application of the continuing violation doctrine or equitable principles, Savory does not dispute this accrual date.

Savory contends that his claims are timely because Peoria's failure to release the evidence for testing is a continuing violation, and Savory therefore should not have been required to sue earlier. This court has applied the continuing violation doctrine when the plaintiff could not reasonably be expected to perceive the alleged violation before the limitations period has run, or when the violation only becomes apparent in light of later events. *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999); *Dasgupta v. Univ. of Wisconsin Bd. of Regents*, 121 F.3d 1138, 1139 (7th Cir. 1997). The continuing violation doctrine is also applicable when the state actor has a policy or practice that brings with it a fresh violation each day. *Reese v. Ice Cream Specialties, Inc.*, 347 F.3d 1007, 1012-14 (7th Cir. 2003); *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996). The Supreme Court applied the continuing violation doctrine in *Bazemore v. Friday*, noting that "[e]ach week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern

was begun prior to the effective date of Title VII." 478 U.S. 385, 395-96 (1986).

In the case before us, the key inquiry is whether Peoria's continued refusal to release the physical evidence for testing was a fresh act each day, or whether it was a discrete act that took place upon the first refusal that merely had lingering consequences. *See Pitts v. City of Kankakee, Illinois*, 267 F.3d 592, 595 (7th Cir. 2001). The Supreme Court addressed this issue in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). With respect to the alleged employment violations, the Court stated: "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." *Id.* at 114. The Court earlier noted in *Delaware State College v. Ricks*, that "[t]he emphasis is not upon the effects of earlier . . . decisions; rather, it is upon whether any present *violation* exists." 449 U.S. 250, 258 (1980) (citations and quotations omitted).

Savory points to our decisions in *Palmer v. Bd. of Educ.*, 46 F.3d 682, 685 (7th Cir. 1995) and *Heard v. Sheahan*, 253 F.3d 316 (7th Cir. 2001), to support application of the continuing violation doctrine in this case. *Palmer* involved racial discrimination in schools, while *Heard* involved the failure to provide needed medical treatment to a state prisoner. Savory's claims for access to physical evidence for testing are unlike these injuries. Savory was notified on a specific day, July 7, 1998, that the state of Illinois had denied his request for testing. If he was unaware of an alleged violation of his rights prior to the ruling, he was certainly aware of it on that date. His continued lack of access to the evidence is not a fresh act on the part of Peoria. Rather, it is the natural consequence of the discrete act that occurred when Peoria first denied access to the evidence. *See Hildebrandt v. Illinois Dept. of Natural Res.*, 347 F.3d 1014 (7th Cir. 2003).

While Savory also relies upon cases in which the wrongful failure to release a prisoner was considered a continuing violation, we cannot consider Savory's confinement in this context. *See, e.g.*, *Abif v. Slaton*, 806 F. Supp. 993 (N.D. Ga. 1992). As Savory has taken pains to point out, he is not attacking the fact or duration of his confinement. If he were, § 1983 would not be open to him; thus, the only injury we are considering is the denied access to physical evidence. The continuing violation doctrine does not apply in this case. Savory's claim accrued on July 7, 1998; thus, the statute of limitations expired on July 7, 2000.

## C. *Equitable Tolling*

Equitable tolling of the statute of limitations "permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before, even though the defendant took no active steps to prevent him from suing." *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 561 (7th Cir. 1996) (quoting *Singletary v. Cont'l Illinois Nat'l Bank and Trust Co. of Chicago*, 9 F.3d 1236, 1241 (7th Cir. 1993)). Such may be the case if the plaintiff is unable to determine who caused his injury, has received inadequate notice, or if the appointment of counsel is pending. *Donald*, 95 F.3d at 562 (citing *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984)). Once extraordinary circumstances weighing in favor of equitable tolling are identified, they must be balanced against any prejudice that the delay might cause the defendants. *Id.*

Savory puts forth several sets of facts that he claims create the extraordinary circumstances required for the doctrine of equitable tolling. First, Savory contends that the circumstances of his previous habeas corpus petition create extraordinary circumstances. When this court reviewed the

denial of his petition and conducted a harmless error analysis, we stated that "[t]he physical evidence, too, was damning." *Savory v. Lane*, 832 F.2d 1011, 1020 (7th Cir. 1987). Savory contends that due to our reliance on the physical evidence in the previous proceeding, equity demands that he now gain access to the evidence for testing. But, the statement itself expresses our belief that evidence other than the physical evidence remained credible. The physical evidence was not the only basis for our decision, and our harmless error analysis does not give rise to extraordinary circumstances for the purposes of equitable tolling.

Second, Savory claims that the recent development of DNA testing technology is an extraordinary circumstance warranting equitable tolling. But we, as the district court did, have already determined that his claim did not accrue until after he surely was aware of how DNA technology might apply to his case. Because Savory waited seven years after demonstrating his awareness of DNA technology to file suit under § 1983, equitable tolling is not appropriate. Third, Savory asserts that his continued claims of innocence warrant equitable tolling. But, if this were sufficient, the statute of limitations could virtually never run for § 1983 claims by prisoners. *See Balsewisc v. Kingston*, 425 F.3d 1029, 1032-33 (7th Cir. 2005) (discussing actual innocence in context of habeas corpus).

Savory finally claims that equitable tolling is appropriate because of his diligence in pursuing access to the physical evidence in his case and in other proceedings asserting his innocence. Indeed, Savory has used a variety of avenues to assert his innocence and appealed Illinois's denial of access to the physical evidence to the Supreme Court of Illinois. But the Supreme Court of Illinois upheld the order denying DNA testing of the evidence on October 1, 2001—more than three years before Savory filed this action under § 1983.

Unlike habeas corpus, § 1983 does not require exhaustion in state courts, and in *Edwards v. Balisok,* the Supreme Court criticized a district court for staying § 1983 proceedings while state proceedings continued, stating: "absent some other bar to the suit, a claim either is cognizable under § 1983 and should immediately go forward, or is not cognizable and should be dismissed." 520 U.S. at 649. Even if we viewed Savory's appeal of his Illinois statutory claim for DNA testing as an extraordinary circumstance worthy of equitable tolling, that would only take him to 2001, and he did not file this action until 2005. In light of the Court's reasoning in *Edwards*, we also decline to extend equitable tolling because of Savory's writ of mandamus and executive clemency petitions. *Id.* Therefore, Savory has not alleged extraordinary circumstances sufficient for the doctrine of equitable tolling and his claims are not timely.

### D.   *Post-Conviction Right of Access to Physical Evidence for Testing*

Savory sets forth several grounds that could potentially support a constitutional right of post-conviction access to physical evidence for the purposes of DNA testing. One potential ground is procedural due process, as discussed in *Thomas v. Goldsmith*, 979 F.2d 746, 749-50 (9th Cir. 1992); *Moore v. Lockyer*, No. C 04-1952 MHP, 2005 WL 2334350 (N.D. Cal. Sept. 23, 2005); s*ee also Brady v. Maryland*, 373 U.S. 83, 87 (1963). Substantive due process or a right to prove actual innocence might also support a post-conviction right of access to physical evidence. *See Harvey II*, 285 F.3d at 319 (Luttig, J., respecting the denial of rehearing *en banc*); *Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir. 1998); *Yarris v. County of Delaware*, No. 05-1319 (3d Cir. Oct. 2, 2006); *see also Schlup v. Delo*, 513 U.S. 298, 318 (1995). But, as Savory's claims are not timely we need not reach that determination, as important as it is. Thus,

we reserve that decision for a time when the issue is properly before us.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*