In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 10-2837 & 10-3054

JANICE DRAPER, BRAD CLEARWATER, and
JULIE NEPOSCHLAN,

*Plaintiffs-Appellants,*

*v.*

TIMOTHY MARTIN, *et al.,*

*Defendants-Appellees.*

ANN LIBRI,

*Plaintiff-Appellant,*

*v.*

PATRICK J. QUINN, Governor of the
State of Illinois, *et al.,*

*Defendants-Appellees.*

Appeals from the United States District Court
for the Central District of Illinois.
Nos. 06-3138 & 06-3167—**Jeanne E. Scott** and **Richard Mills**, *Judges.*

ARGUED OCTOBER 18, 2011—DECIDED DECEMBER 30, 2011

Before EASTERBROOK, *Chief Judge,* and RIPPLE and
KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* In two separate suits, a total of four former Illinois Department of Transportation ("IDOT") employees alleged they were wrongfully terminated because of their political beliefs and party affiliation. In each case, the district court granted the defendants' motion for summary judgment on the ground that Illinois's two-year statute of limitations barred the plaintiffs' claims. We affirm.

## I. BACKGROUND

The state of Illinois faced serious budgetary challenges near the end of fiscal-year 2004. To address the projected budget shortfall, the drafters of the 2005 budget sought to "[s]treamline operations and improve efficiency by consolidating functions and reorganizing operations." Stripping away the euphemisms, the budget called for a significant staff reduction, including 190 employee lay-offs at IDOT.

Although there is some dispute about whether IDOT actually created a reorganization plan, it is undisputed that plaintiffs Janice Draper, Brad Clearwater, Julie Neposchlan, and Ann Libri (collectively the "Plaintiffs") received layoff notices no later than June 15, 2004. The written notice received by each employee was identical in all material respects,[1] stating:

---

[1] Plaintiff-Draper's letter contained one additional phrase indicating that the abolishment was "due to lack of work." The other three notices did not contain this phrase.

> The Department is currently undergoing material reorganizations. Your position . . . is targeted for abolishment. The Department has no vacancies to offer you at this time. Therefore, it is with regret that I inform you that you will be laid off . . . effective close of business June 30, 2004.

On June 30, 2006, exactly two years after the effective date of their terminations, plaintiffs Draper, Clearwater, and Neposchlan (the "Draper Plaintiffs") filed a two-count complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Central District of Illinois. IDOT managers Timothy Martin,[2] Scott Doubet, Robert Millette, and Robin Black, and IDOT contractor Michael Stout were named as defendants (the "Draper Defendants"). The Draper Plaintiffs first alleged that their terminations were politically motivated in violation of the First Amendment, and second, that they were denied a property interest in their jobs in violation of the Fourteenth Amendment. On similar grounds, Plaintiff Libri filed an eight-count complaint[3] in Illinois state court naming Martin, Stout, and Doubet and adding

---

[2] The district court replaced Defendant-Martin with current IDOT Secretary, Gary Hanning, pursuant to Fed. R. Civ. P. 25(d).

[3] Plaintiff Libri does not appeal counts IV through VI, which all relate to her attempt to certify a class of terminated IDOT employees.

then-Governor Rod Blagojevich[4] and IDOT manager Jacob Miller as defendants (the "Libri Defendants"). The Libri-Defendants removed the complaint to federal court and the district court exercised supplemental jurisdiction over the state-law claims.

In both cases, the Defendants moved for summary judgment arguing Illinois's statute of limitations barred Plaintiffs' claims. Judge Scott granted the Draper-Defendant's summary judgment motion on July 6, 2010, and Judge Mills similarly granted the Libri-Defendant's summary judgment motion on July 15, 2010. The Plaintiffs in both cases filed this timely appeal, and we consolidated the cases.

## II. ANALYSIS

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review grants of summary judgment *de novo*, *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 690 (7th Cir. 2010), viewing the record in the light most favorable to the Plaintiffs and drawing all reasonable inferences in their favor, *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010). Although we have previously cautioned against weighing evidence at summary judgment, *Kodish v.*

---

[4] The district court replaced Defendant-Blagojevich for Governor Patrick J. Quinn pursuant to Fed. R. Civ. P. 25(d).

*Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010), we have also said that "a factual dispute is 'genuine' only if a reasonable jury could find for either party," *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009).

The sole issue for our review is whether the Plaintiffs filed their complaints within the appropriate statute of limitations window.[5] In Illinois, the statute of limitations period for § 1983 claims is two years, 735 ILCS 5/13-202; *Jenkins v. Vill. of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007), and the claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated," *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004) (*quoting Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993)). We use a two-step test to determine the accrual date: (1) we identify the injury

---

[5] In a four-sentence concluding paragraph, the Plaintiffs summarily argue that we should apply the doctrine of equitable tolling to the extent that we find their claims barred by the statute of limitations. *See Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 291 (7th Cir. 1986) (equitable tolling focuses on "the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant"). But, the Plaintiffs fail to offer any record citations or analysis supporting such a claim and we "will not hunt through the record" looking for corroborating evidence. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 705 (7th Cir. 2010). Accordingly, we deem their undeveloped argument waived and we need not consider it. *See Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 650 (7th Cir. 2011).

and (2) we determine when the plaintiff could have sued for that injury. *Hileman*, 367 F.3d at 696.

In discriminatory discharge cases, the plaintiffs' injury coincides with the decision to layoff the plaintiffs, not the actual termination date. *Kuemmerlein v. Bd. of Educ. of the Madison Metro. Sch. Dist.*, 894 F.2d 257, 259 (7th Cir. 1990); *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981); *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) ("[t]he proper focus is upon the time of the *discriminatory act*s, not upon the time at which the *consequences* of the acts became most painful"). In this court, the date of the unlawful employment practice is when a "final, ultimate, [and] non-tentative" decision was made for which the employee receives unequivocal notice. *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004); *Smith v. Potter*, 445 F.3d 1000, 1007 (7th Cir. 2006).[6] But, in procedural due process cases, the claim for a deprivation of public employment accrues on the actual termination

---

[6] The Plaintiffs attempt to construe *Potter* as holding the statute of limitations begins accruing on the effective date of termination. This misstates the holding in *Potter*. Instead, *Potter* addresses a Title VII regulation, 29 C.F.R. § 1614.105, which provides that federal employees fearing discrimination must "initiate contact with a[n EEOC] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." Because the plaintiff in *Potter* did not bring her action to the EEOC within 45 days of the termination effective date, we held that her complaint was time-barred. *Potter*, 445 F.3d at 1007.

date. *Lawshe v. Simpson*, 16 F.3d 1475, 1480 (7th Cir. 1994). Normally, we would apply the *Lawshe* standard to the Draper Plaintiffs' procedural due process claim, but the Draper Plaintiffs did not make this argument before either the district court or this court. As we have often said, "it is not this court's responsibility to research and construct the parties' arguments." *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002) (quotation and punctuation marks omitted). Because the Plaintiffs do not suggest that *Lawshe* applies, we consider that argument waived.

On appeal, the Plaintiffs principally argue that the statute of limitations period did not begin running when the Plaintiffs received their termination notices because of the uncertainty surrounding the reorganization. In other words, a "final, ultimate, [and] non-tentative" decision about which IDOT employees to terminate was never made. To bolster their claim, the Plaintiffs highlight three employees[7] who received termination notice but were ultimately retained and two additional employees who received notice but were called back to work. Without a final termination decision, the notice each employee received was not unequivocal. Therefore, the Plaintiffs argue that the date of the discrimi-

---

[7] Two of these three employees were actually terminated but were later rehired into different positions. Because these two employees were terminated in accordance with their termination notices, the Plaintiffs' uncertainty argument is significantly weakened.

natory act was actually the effective date of their termination. We disagree.

The alleged uncertainty in IDOT's reorganization plan does not change the statute of limitations accrual date, and the district courts rightfully found *Kuemmerlein* to control the outcome of these cases. There, several school teachers filed suit against the Madison Metropolitan School District ("MMSD") alleging that the school district unlawfully used race as a factor in its layoff plan. *Kuemmerlein*, 894 F.2d at 258. In previous years, the district had executed similar layoffs in which the plaintiffs were targeted for termination but were ultimately recalled to work. In fact, "[i]n the five previous years, MMSD had recalled, within a month and a half of the beginning of the school year, an average of fifty-one percent of the teachers who received layoff notices," and in one year, the district recalled all twelve teachers who had received notice of their termination. *Id.* at 258-59. On those facts, we held that even a 50% chance of being rehired was not enough uncertainty to change the accrual date from the date of notice to the date of termination. *Id.* at 260 n.4 ("Conceivably, a sham layoff notice, where all notified employees are eventually recalled to work, might not start the running of the statute of limitations. The facts of this case do not suggest such a scenario."). There is even less uncertainty in this case as the Plaintiffs only cited a handful of employees who were recalled. As such, this case does not approach the sham-layoff scenario we acknowledged in *Kuemmerlein*.

The Plaintiffs also argue that *Kuemmerlein* would have come out differently had the "final, ultimate, [and] non-tentative" language we used in *Flannery* existed at the time of *Kuemmerlein*. This is incorrect. To the contrary, we explicitly interpreted the Supreme Court's *Ricks/Chardon* line of cases as saying the statute of limitations accrues when the defendants make a "*final* decision." *Id.* at 259 (emphasis added). There is no meaningful difference between a "final" decision and a "final, ultimate, [and] non-tentative" decision. We used this rule before and after *Kuemmerlein*, and we use it again today: The statute of limitations accrual date begins at the time of the final discriminatory decision.

Finally, we find that the Plaintiffs are also wrong to suggest that their individual notices were not unequivocal. Each notice letter stated that "your position . . . is targeted for abolishment," and "it is with regret that I inform you that you will be laid off . . . effective close of business June 30, 2004." In *Potter*, we found a similar notice letter satisfied this test. 445 F.3d at 1007 (the letter provided, "You are hereby notified that you will be removed from the Postal Service on November 27, 1998"). There is functionally no difference between the *Potter*-statement, "you will be removed" and the IDOT-statement, "you will be laid off." In both cases, there is little doubt that a reasonable person in the Plaintiffs' position could draw any other conclusion from that letter than the named employee was to be terminated effective June 30, 2004. *See id.* Therefore, the notice each plaintiff received unequivocally indicated that Plaintiffs' employment was to end on June 30, 2004.

### III.  CONCLUSION

We hold that the Plaintiffs' claims are barred by Illinois's two-year statute of limitations and AFFIRM the district courts' grant of summary judgment for the Defendants.